Teresa A. Ascencio Cal. Bar No. 217053
SONNENSCHEIN NATH & ROSENTHAL LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
tascencio@sonnenschein.com

Attorneys for Defendant DMS Holdings, Inc.
dba Mabis Healthcare and Duro-Med Industries

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>DMS HOLDINGS, INC. dba MABIS HEALTHCARE and DURO-MED INDUSTRIES, a Delaware Corporation; and DOES 1-100,<br><br>Defendant. | Case No. 3:08-cv-00559-BTM-(CAB)<br><br>Action filed: March 25, 2008<br><br>**DEFENDANT DMS HOLDINGS, INC. dba MABIS HEALTHCARE and DURO-MED INDUSTRIES' REPLY TO PLAINTIFF'S RESPONSE TO OSC RE STAY**<br><br>Judge Barry Ted Moskowitz<br>Magistrate Judge Cathy Ann Bencivengo |

Defendant DMS Holdings, Inc., doing business as MABIS Healthcare and Duro-Med Industries ("DMS Holdings") hereby files this Reply to Plaintiff's Response to OSC Re Stay.

Sorensen is involved in numerous cases involving United States Patent 4,935,184 (the "'184 patent"), 23 of which Plaintiff has sought to consolidate with the above-captioned action. *See* Plaintiff's Motion for Consolidation, Doc. # 5. On July 30, 2007, Black & Decker filed a request with the United States Patent and Trademark Office ("PTO") to reexamine the '184 patent based on prior art references that were not considered by the PTO in its initial prosecution of the '184 patent. On August 3, 2007, the defendants in *Sorensen v. Black & Decker*, 06-cv-01572 (USDC S.D. Cal.) (the "*Black & Decker* action"), filed a joint motion to stay litigation pending the outcome of reexamination proceedings. On September 10, 2007, the court in the

*Black & Decker* action stayed the *Black & Decker* action while the PTO considered Black & Decker's request for reexamination. *Sorensen Research & Dev. Trust v. Black & Decker Corp.*, 2007 WL 2696590 (S.D. Cal. 2007) (Exhibit 1 to Authorities in Support of Reply to Plaintiff's Response to OSC ("Authorities")).[1] The PTO then granted Black & Decker's request for reexamination of Sorensen's '184 patent in the fall of 2007.

Sorensen seeks to move forward in the present case, notwithstanding that several of the cases related to the '184 patent have been stayed or partially stayed. Doing so will cause confusion and could lead to inconsistent results concerning the '184 patent. Further, based on Plaintiff's own authority, the reexamination period is not likely to be lengthy and the longer the reexamination, the more likely it will result in cancellation of the '184 patent, strongly supporting a stay. In addition, a stay will benefit all the parties and the Court without causing prejudice to Sorensen because the PTO's reexamination determination may eliminate the need for trial or, at the very least, simplify any issues that must be litigated. Additionally, the parties' and the Court's resources will be conserved, and litigation costs will be reduced greatly because the parties will not be forced to litigate issues that may be rendered moot by the PTO. As explained more completely herein, the Court should stay this action until the PTO completes its reexamination of the '184 patent.

## ARGUMENT

### I. LEGAL STANDARD FOR A STAY PENDING PTO REEXAMINATION

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). "Determining whether to grant a stay pending the outcome of the PTO's reexamination is a matter soundly within [the Court's] discretion." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 935 (1938); *see also Tap Pharm. Prod., Inc. v. Atrix Lab., Inc.*, 70 U.S.P.Q.2d 1319, 2004 WL 422697 *1 (N.D. Ill. 2004) (Ex. 2). The determination of whether to grant a stay pending the outcome of the PTO's reexamination is a matter soundly within the discretion of the district

---

[1] All Exhibit references herein are to the Authorities filed herewith, unless otherwise stated.

court. *Predicate Logic, Inc. v. Dist. Software, Inc.*, Case No. 01cv1951, *2 (S.D. Cal. 2002) (Moskowitz, J. presiding) (Ex. 3); *Photoflex Prods., Inc. v. Circa 3 LLC*, 2006 WL 1440363 *2-3 (N.D. Cal. 2006) (Ex. 4).

"There is a 'liberal policy' in favor of granting motions to stay pending the outcome of PTO reexamination proceedings." *Black & Decker* action (Ex. 1) (in a case that remains pending, the court granted defendants' stay against the non-movant plaintiff, Sorensen, which also is the plaintiff in this case).

Courts have considered the following factors when ruling on a stay of litigation pending the PTO's reexamination determination: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether discovery has been completed and a trial date has been set. *Predicate Logic*, Case No. 01cv1951, Doc. # 126 at p.2 (Ex. 3); *Photoflex Prods.*, 2006 WL 1440363 *3 (Ex. 4); *Nanometrics, Inc. v. Nova Measuring Inst., Ltd.*, 2007 WL 627920 *4 (N.D. Cal. 2007) (Ex. 5); *see also Tap Pharm. Prod., Inc.*, 2004 WL 422697 at *1 (Ex. 2); *Wireless Spectrum Tech., Inc. v. Motorola*, 57 U.S.P.Q.2d 1662, 2001 WL 32852 *1 (N.D. Ill. 2001) (Ex. 6). ("In deciding whether to grant a stay, the Court must consider the 'possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case.'"); *Clintec Nutrition Co. v. Abbott Lab.*, 1995 WL 228988 *1 (N.D. Ill. 1995) (Ex. 7) (same).

"A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomm. Tech, LLC Patent Litigation*, 385 F. Supp. 2d 1002, 1023 (N.D. Cal. 2005). Indeed, with respect to the issue of patent claim validity, the Federal Circuit has recognized that the reexamination procedure serves to "eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of the issue by providing a district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1342. Moreover, courts have

recognized that a stay also may result in dismissal, lead to settlement, reduce the issues for litigation, and provide the parties and Court with an expert opinion. *Broadcast Innovation, LLC v. Charter Comm. Inc.*, 2006 WL 1897165 *9-10 (D. Colo. 2006) (Ex. 8).

Because a stay of the present litigation will not prejudice Sorensen, will simplify the issues in this case, and will reduce the effort and costs expended by the parties and the Court, this Court should stay all proceedings until the PTO concludes its reexamination of the '184 patent.

## II. A STAY OF THE LITIGATION PENDING THE PTO'S REEXAMINATION OF THE '184 PATENT IS WARRANTED

The lack of prejudice to Sorensen, the benefit of judicial economy, and the conservation of the parties' and the Court's resources justify a stay of the present litigation pending the outcome of the PTO's reexamination of the '184 patent.

### A. The Possible Length Of The PTO Reexamination Favors A Stay

Sorensen's argument that the typical duration of PTO reexamination proceedings justifies denial of a stay is premature, as this case was filed less than six months ago. Moreover, the argument fails because Plaintiff's statistics prove too much, are counter to the PTO's estimates, and, in any event, lengthy reexamination alone is not sufficient to warrant denial of a stay.

Plaintiff's speculative predications of a lengthy reexamination period are based on inadmissible hearsay and improper opinion. Notwithstanding Plaintiff's proclamation that the study upon which Plaintiff relies was issued by a "well respected intellectual property blogger," the study expressly states it is based on a *sample* and rough estimates, lacking a full explanation of how the data was derived or calculated and lacking any foundation as to the author's credentials to give an expert opinion.[2] *See* Kramer Decl., Ex. B, p.9.

Even assuming the admissibility of the data, however, Plaintiff's statistics prove too much. In the study, Couch reports that "[r]eexaminations that simply resulted in a confirmation

---

[2] Exhibits C and D to the Kramer Declaration, consisting of materials from Professor Harold Wegner, are based on the data in the Couch study. Therefore, this reply primarily addresses the

-4-
REPLY TO PLAINTIFF'S RESPONSE TO OSC RE STAY
08-cv-00559-BTM-(CAB)

that the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams [sic] were much slower (averaging 45 months)." Thus, according to Plaintiff's own authority, if the '184 patent is merely confirmed, the parties are likely to know as much at a much sooner date. If the reexamination of the '184 patent takes longer, according to Plaintiff's own authority, it is probably due to cancellation of some or all claims. In that event, the longer reexamination period would certainly warrant a longer stay, as cancellation of the '184 patent would lead to dismissal of this action. Further, according to Plaintiff's authority, the seven to eight year period for some reexaminations is based only on those claims appealed to the Federal Circuit. In this case, where the '184 patent has expired, the reexamination is likely to take less time. Therefore, any delay caused by reexamination does not justify denying a stay of this action.

Contrary to Plaintiff's statistics, the PTO itself reports that the average pendency of a reexamination proceeding is 24.3 months with the median of 18.9 months. (Ex. 13). Certainly, the PTO is in the best position to know how long it is taking to reexamine patents, and its statistics should be given more weight.

Even assuming a lengthy reexamination period, the stay should remain in place. As this Court has recognized, "the general prejudice of having to wait for resolution [of a reexamination proceeding] is not a persuasive reason to deny the motion for stay." *Predicate Logic*, Case No. 01cv1951, Doc. # 126 at p.4-5 (Ex. 3). The delay inherent in the reexamination process does not, alone, constitute undue prejudice, justifying a denial of a stay. *See, e.g., Photoflex Prods.*, 2006 WL 1440363 *7 (Ex. 4 ); *Nanometrics*, 2007 WL 627920 *9 (Ex. 5); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661 *7 (N.D. Cal. 2006) (Ex. 9). Moreover, delay in this action "is more than off-set by increased certainty of whether this single patent will survive reexamination and whether there will be any need for litigation." *Nanometrics*, 2007 WL 627920 *10 (Ex. 5). As the Court noted in the *Black & Decker* action:

> Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

---

Couch data, although the arguments equally apply to the Wegner materials.

-5-
REPLY TO PLAINTIFF'S RESPONSE TO OSC RE STAY
08-cv-00559-BTM-(CAB)

*Black & Decker* action (Ex. 1, p. 7). Plaintiff's failure to file suit until a month after the patent had expired and roughly three years after first notifying DMS Holdings of its infringement claims precludes Plaintiff from now relying on the potential length of reexamination to deny a stay. *See Ingro v. Tyco Indus., Inc. et al.*, 227 U.S.P.Q. 69, 1985 WL 1649 *10 (N.D. Ill. 1985) (Ex. 11).

### B. Plaintiff Ignores That The Reexamination, Whatever The Outcome, Will Be Instructive To The Court And Parties

#### 1. Plaintiff Misconstrues Its Statistical Support

Assuming *arguendo* the validity of the data relied upon by Plaintiff, Plaintiff has misconstrued it. Despite Plaintiff's assertion that "[t]he most common result (59%) [of reexamination] is the confirmation of at least one independent claim," it also is true that the majority of the time, reexamination leads to amendment or cancellation of at least one claim. Plaintiff's Response at p.6; Kramer Decl., Ex. B, p.9. Indeed, Plaintiff's own authority states that "[f]rom my sample, 71% of the completed reexaminations resulted in claims that were either amended or cancelled while only the remaining 29% resulted in all claims being confirmed. A much smaller number—12%—of the reexaminations resulted in all claims being cancelled." *Id.* This is consistent with statistics on the same issue reported in case law: "[g]enerally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prod., Inc.*, 2004 WL 422697 *2 (Ex. 2). Thus, a strong majority of claims result in amendment or cancellation of at least one claim, which would be instructive to the issues in this case.

#### 2. The Reexamination Will Be Instructive To The Parties And Will Negate Or Simplify Issues For Litigation And Trial

While neither the Court nor the parties want to have an action on their docket or books, it is certainly preferable to spending countless resources to litigate issues on which the PTO will provide its expert opinion and which may become moot. The Federal Circuit has explained that "'[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of

the PTO (when a claim survives the reexamination proceedings).'" *Tap Pharm. Prod., Inc.*, 2004 WL 422697 *2 (Ex. 2) (*quoting Gould*, 705 F.2d at 1342); *see also Clintec Nutrition Co.*, 1995 WL 228988 *3 (Ex. 7) (same). "A stay will allow both the parties to take advantage of the PTO's expert analysis of prior art and may limit or narrow the remaining issues," and thereby avoid the "substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO." *Id.*; *Wireless Spectrum Tech., Inc.*, 2001 WL 32852 *2 (Ex. 6) ("If the PTO with its unique expertise determines that all or some of the [patent's] claims are invalid, that determination will either dispose of this case entirely or at least aid the Court in adjudicating this case."); *Clintec Nutrition Co.*, 1995 WL 228988 *1, 3 (Ex. 7) ("[T]he PTO could expand or reduce [the patent's] claims. . . . Therefore, in the interests of judicial economy it does not make sense . . . to proceed with the infringement suit when the patent on which it is based could be altered after the PTO reexamines it."); *Emhart Industries, Inc. Sankyo Seiki Mfg. Co., Ltd.*, 1987 WL 6314 *4 (N.D. Ill. 1987) (Ex. 10) ("[T]he end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial"); *Black & Decker* action, 2007 WL 2696590 at *5 (Ex. 1) ("The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.").

In addition to providing the Court and the parties with an opinion as to the '184 patent, the PTO reexamination also will limit or eliminate the issues for trial. "Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts." *Ingro v. Tyco Indus., Inc. et al.*, 227 U.S.P.Q. 69, 1985 WL 1649 *2 (N.D. Ill. 1985) (Ex. 11). "If [litigation] proceedings are not stayed, there is a substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO." *Tap Pharm. Prod., Inc.*, 2004 WL 422697 *2 (Ex. 2); *Wireless Spectrum Tech., Inc.*, 2001 WL 32852 *2 (Ex. 6) ("Under these circumstances, there is no need for either party to spend time and money litigating both here and in front of the PTO at the same time.").

Thus, the Court and the parties will benefit from the PTO's reexamination of the '184 patent because the results of reexamination will likely narrow the issues presented to this Court, if not eliminate them altogether. This is so because cancellation, amendment or confirmation of all or any part of the '184 patent will impact all defendants in all the cases concerning the '184 patent and will be instructive to the parties and the Court. The Court's ability to rely on the expertise of the PTO, and the likely simplification of this case upon the PTO's reexamination determination, warrant a stay of this litigation.

### C.  A Stay Will Not Prejudice Sorensen

Sorensen will not suffer prejudice or undue delay as a result of a stay because this case is still in the initial pleadings stage, discovery has not commenced, and Sorensen was aware of the PTO's reexamination of the '184 patent before Sorensen filed this action.[3] In *Predicate Logic*, addressing the issue of staying a one-year-old case, the court stated "this litigation has not proceeded so far that it would be unjust to stay the action." *Predicate Logic*, Case No. 01cv1951, Doc. # 126 at p.3 (Ex. 3). The same is true here.

Furthermore, Sorensen will not be prejudiced with respect to his potential remedies because Sorensen's '184 patent expired in February 2008; consequently, Sorensen can claim only monetary damages and not injunctive relief. *See Black & Decker* action, 2007 WL 2696590 at *4 (Ex. 1) (due to the expiration of Sorensen's '184 patent in February 2008, "[Sorensen] would not have been granted any injunctive relief by this Court. Therefore, Plaintiff's claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff."). Because this litigation recently commenced and because an adequate legal remedy exists for Sorensen, Sorensen will not be prejudiced, and the Court should stay this action.

### D.  A Partial Stay Is Not Warranted

Plaintiff asserts that the stay should be partial so that the parties may litigate certain

---

[3] Generally, the Court considers any prejudice to the non-moving party. As the issue of staying this action comes before the Court on an Order to Show Cause, Plaintiff is not the "non-moving party." As Plaintiff objects to the stay, however, DMS addresses the lack of prejudice to Plaintiff herein.

affirmative defenses, including laches, venue, and failure to state a claim[4] and conduct discovery on a limited basis. Partial litigation of this action could be rendered completely unnecessary by the PTO's reexamination, is inefficient, and will cause confusion. The possibility that the PTO may cancel the '184 patent would warrant a dismissal of the entire action, rendering the parties' efforts to partially litigate this case a waste of resources. *Ingro*, 1985 WL 1649 at *3 (Ex. 11) ("Because of the time, effort, and expense involved in discovery of damages and other issues[,] . . . such other discovery should await the outcome of the reexamination proceedings."); *Sun-Flex Co. Inc. Softview Computer Prod., Corp.*, 1989 WL 117976 *1 (N.D. Ill. 1989) (Ex. 12) ("Even if issues remain to be litigated after the reexaminations are completed, the cost and scope of the remaining litigation are likely to be substantially reduced."); *Black & Decker* action, 2007 WL 2696590 at *6 (Ex. 1) ("Moreover, if the claims are narrowed, both sets of parties will have benefited by avoiding the needless waste of resources before this Court").

While the Court has partially lifted a stay in the *Black & Decker* action, it was based on unique circumstances present in that case but not present here. For example, in the *Black & Decker* action, Plaintiff moved for a partial lifting of the stay because a corporate entity had been merged out of existence and because Plaintiff wanted the opportunity to inspect manufacturing plants owned by third parties. *See Black & Decker* action, Plaintiff's Mem. in Support of Mtn. for Exception to Stay, Doc. # 264. Those issues do not exist here; there is no risk that Defendant DMS Holdings will be merged out of existence. In addition, <u>prior to Plaintiff filing this action</u>, DMS Holdings offered Plaintiff the opportunity to inspect the plant in China which manufactures the products at issue. Plaintiff declined. Accordingly, the same circumstances which justified a partial stay in the *Black & Decker* action, do not exist here.

Moreover, as the *Black & Decker* action teaches, a partial stay to allow partial discovery

---

[4] Plaintiff asserts without explanation that there are additional affirmative defenses and proceedings that do not relate to the reexamination hearings. Response, p. 10-11 ("Defendant has asserted the following substantive affirmative defenses that are unrelated to the reexamination proceedings.") Given Plaintiff's vague and incomplete assertions, it is impossible to determine what other affirmative defenses or proceedings arguably would justify a partial stay. Certainly, Plaintiff has identified none.

is likely to require the innumerable resources litigating discovery issues and to lead to confusion as to the scope of permissible discovery. *See, e.g.*, *Black & Decker* action, Motions to Quash, Doc. ## 281, 283. Accordingly, a partial stay is not warranted or advisable in this case.

## CONCLUSION

For the foregoing reasons, Defendant DMS Holdings respectfully requests that the Court stay this action pending the reexamination of the '184 patent.

Dated: September 4, 2008             **SONNENSCHEIN NATH & ROSENTHAL LLP**

By: /s/   Teresa A. Ascencio
Attorneys for Defendant DMS Holdings, Inc. dba Mabis Healthcare and Duro-Med Industries

## PROOF OF SERVICE

I am employed in Jackson County, Missouri and am an attorney duly licensed to practice law in the State of California and before the United States District Court for the Southern District of California. I am over the age of eighteen and not a party to the within action; my business address is 4520 Main Street, Suite 1100, Kansas City, MO 64111.

I hereby certify that on September 4, 2008, I electronically filed the foregoing

**DEFENDANTS DMS HOLDINGS, INC. dba MABIS HEALTHCARE and DURO-MED INDUSTRIES' REPLY TO PLAINTIFF'S RESPONSE TO OSC RE STAY**

with the Clerk of the Court using the ECF system which will send notification of such filing to all parties registered to receive electronic service in the above-captioned case.

I declare under the laws of California and the United States of America that I am a member of the bar of this Court who executed service in the foregoing manner.

EXECUTED ON September 4, 2008 at Kansas City, Missouri:  s/Teresa A. Ascencio