Westlaw.

Slip Copy                                                          Page 1
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

C Sorensen ex rel. Sorensen Research and
Development Trust v. Black and Decker Corp.
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Jens Erik SORENSEN, as Trustee of SORENSEN
RESEARCH AND DEVELOPMENT TRUST,
Plaintiff,
v.
The BLACK AND DECKER CORPORATION, et
al., Defendants.
No. 06cv1572 BTM (CAB).

Sept. 10, 2007.

James Michael Kaler, Law Offices of James M.
Kaler, Melody A. Kramer, Kramer Law Office,
Patricia A. Shackelford, Zelkind and Shackelford,
San Diego, CA, for Plaintiff.
Dina M. Hayes, Gregory P. Casimer, Raymond P.
Niro, Jr., Niro, Scavone, Haller and Niro, Chicago,
IL, John Christopher Jaczko, Allison H. Goddard,
Jaczko Goddard, Kenneth S. Klein, Foley and
Lardner LLP, San Diego, CA, Robert L. Binder,
Foley & Lardner LLP, Milwaukee, WI, for
Defendants.

### ORDER:

**(1) DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION OF DENIAL OF
OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER OF APRIL 9, 2007 AS MOOT [Doc. #
163];**

**(2) GRANTING DEFENDANTS' MOTION FOR
RECONSIDERATION OF THE COURT'S
JUNE. 20, 2007 ORDER RE BIFURCATION
[Doc. # 171];**

**(3) GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO STAY
[Doc. # 178];**

**and**

**(4) DENYING PLAINTIFF'S MOTION FOR**

### PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. # 204]

BARRY TED MOSKOWITZ, United States District
Judge.

*I. Motion for Reconsideration of Denial of
Objections to Magistrate Judge's Order*

**\*1** On April 9, 2007, Magistrate Judge Bencivengo
issued an order in which she granted in part and
denied in part Plaintiff's motion to compel further
responses to discovery. In accordance with 28 U.S.C.
§ 636(b)(1)(A) and Fed.R.Civ.P. 72(a), Plaintiff filed
an objection to that ruling, arguing that it was both
clearly erroneous and contrary to law. In an order
entered June 14, 2007, the Court overruled Plaintiff's
objection without prejudice. The Court found that the
Magistrate Judge's determinations regarding the
Black & Decker Defendants' waiver of the attorney-
client privilege, and the applicability of Patent Local
Rule 2.5(d), were neither clearly erroneous nor
contrary to law, on the record before the Court.
However, the Court was unable to determine at that
time whether, and to what extent, the Black & Decker
Defendants ("B & D") intended to rely upon the
death of Dennis Dearing to provide the requisite
showing of prejudice in support of any laches and/or
equitable estoppel defenses. Therefore, Plaintiff was
granted leave to serve an interrogatory upon B & D,
which stated: "Set forth, in detail, all prejudice to
Defendants that resulted from the death of Dennis
Dearing in regard to this case."To the extent Plaintiff
believed that B & D's response to the interrogatory
indicated that this Court's determination regarding
waiver of the attorney-client privilege was in error, it
was invited to move for reconsideration of the
decision at that time.

On July 11, 2007, B & D responded to Plaintiff's
interrogatory setting forth the prejudice that resulted
from the death of its former in-house counsel Dennis
Dearing. The prejudice identified included the
inability to have Mr. Dearing testify regarding his
communications in the mid-1990s pertaining to Mr.
Jens Ole Sorensen's claims of infringement of the
'184 Patent. These communications included
discussions directly with Mr. Sorensen and his

**EXHIBIT 1**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B & D also indicated that it was prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B & D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B & D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

*2 [Doc. # 177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B & D an opportunity to appeal the order. B & D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. # 240]. B & D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B & D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

## II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B & D's motion for summary judgment of laches. The Court denied B & D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B & D's equitable defenses of laches and estoppel. At B & D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. # 147 at 2-3.] Citing the Ninth Circuit case of *Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir.2001)*, the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B & D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. # 171.] B & D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights to a jury determination on willfulness, B & D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B & D's motion for reconsideration arguing that there is no authority establishing any right to a jury trial on willfulness and, to the extent such a right exists, B & D has waived its rights by continually requesting that the Court schedule a short bench trial on laches before proceeding with the rest of the action.

*3 The Court finds that the right to a jury trial on willfulness exists in a patent action that will be tried to a jury. *See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.Cir.1989)*. Having considered the submissions of the parties and the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

record of these proceedings, the Court does not find that B & D has knowingly waived its right to a jury trial on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by this Court in an effort to accommodate B & D's request for an early determination of laches, which it argued, if found, would greatly expedite the conclusion of this matter. Having recognized that a laches determination requires that this Court determine, before any jury has considered the question, whether Defendants willfully infringed Plaintiff's patent, B & D has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial despite B & D's express wishes.

The Court's recognition of the practical ramifications of the intertwinement of willfulness in any laches determination was the impetus for the Court's invitation to reconsider in its June 20, 2007 order. Having considered B & D's submission, which was based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS** B & D's motion. The bifurcated bench trial on equitable defenses previously scheduled for December 17, 2007 is hereby **VACATED,** along with all pretrial proceedings associated with it, including the November 26, 2007 pretrial conference.

### III.    Motion    to    Stay    Litigation    Pending    Reexamination

On August 3, 2007, all Defendants jointly filed a motion for a stay of these proceedings. Defendants' motion is based on B & D's pending request for reexamination of Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on July 30, 2007. The request for reexamination challenges, *inter alia,* all 5 claims of the '184 Patent that are asserted in the present litigation. The challenge is based on a number of prior art references, almost all of which were apparently not considered by the PTO in the prosecution of the '184 Patent.

Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422,1426-27 (Fed.Cir.1988). The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. *See, e.g., Photoflex Products, Inc. v. Circa 3*

*LLC,* No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D.Cal. May 24, 2006). There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case. *See, e.g., Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

*4 The Court finds that this litigation has not proceeded so far that it would be unjust to stay the action. Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion-it is not.[FN] For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [*See* Doc. # 159 at 2.] No deadline for the completion of fact discovery has even been set. Moreover, the parties are just beginning to brief the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. *See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc.,* No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D.Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                    Page 4
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

trial date was less than three months away).

> FN1. In reaching this determination, the
> Court has considered the surreply submitted
> by Plaintiff and, therefore, the pending ex
> parte request to file a surreply [Doc. # 201]
> is **GRANTED.**

Plaintiff claims Defendants delayed filing their
request for reexamination to gain a tactical advantage
over it. He claims that Defendants were aware of the
prior art that they reference in their reexamination
request over seven months ago, but purposely
delayed so that the '184 Patent would expire during
the reexamination process, thereby precluding
Plaintiff from offering any amendments to the claims.
Defendants respond that there was no intentional
delay and that their decision to request reexamination
was based, in part, on the Supreme Court decision in
_KSR International Co. v. Teleflex Inc., ---U.S. ----,
127 S.Ct. 1727, 167 L.Ed.2d 705 (2007),_ which was
only issued at the end of April. The Court is not
convinced that Defendants employed any improper
tactics in filing their request for reexamination. While
Plaintiff is rightfully concerned that a reexamination
in the twilight of his patent puts him at a distinct
disadvantage, he could have prevented this situation
by filing suit many years ago, thereby allowing
sufficient time for any reexamination to occur before
the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice
if a stay should be entered basically boil down to his
inconvenience in delaying final collection of any
monetary award of royalties, assuming he ultimately
wins. However, as the court recognized in _Broadcast,_
the prejudice factor "is best summarized by one
question: _do the Plaintiffs have an adequate remedy
at law?"_ 2006 U.S. Dist. LEXIS 46623, at *32. Just
as in _Broadcast,_ the answer here is that clearly
Plaintiff does have an adequate remedy. Defendants
point out, and Plaintiff has not disputed, that the '184
Patent will expire in February 2008 independent of
reexamination. Given that a trial on the merits could
not occur prior to that date, Plaintiff would not have
been granted any injunctive relief by this Court.
Therefore, his claim would be restricted to past
monetary damages, which, with the addition of
prejudgment interest, are fully capable of
compensating Plaintiff. Unfortunately, reexamination
can be a drawn out process, resulting in a significant

delay in court proceedings. Protracted delay is always
a risk inherent in granting a stay, yet courts continue
to stay actions pending reexamination. The general
prejudice of having to wait for resolution is not a
persuasive reason to deny the motion for stay. An
average delay for reexamination of approximately
18-23 months is especially inconsequential where
Plaintiff himself waited as many as twelve years
before bringing the present litigation. (_See_ PTO
Reexamination Statistics at Ex. B to Niro Decl.; Doc.
# 180-3.)

**\*5** In addition, the Federal Circuit has recently
confirmed that the PTO would not be bound in its
reexamination by the determinations of this Court. _In
re Trans Texas Holdings Corp.,_ 2006-1599 and 2006-
1600, 2007 U.S.App. LEXIS 19909, at *14-19
(Fed.Cir. Aug. 22, 2007). Because of this, the Court
finds that not only is Plaintiff unlikely to be
prejudiced in these proceedings by a stay pending the
PTO reexamination, but Defendants would
potentially be prejudiced by _failing_ to enter a stay.
One court has explained this possibility accordingly:

> Not only could the Court and the PTO reach
> conflicting determinations, but one possible scenario
> could result in irreparable harm to [Defendant]: if this
> Court finds that the [patent] is not invalid and that
> [Defendant] has infringed it, and orders [Defendant]
> to pay damages to [Plaintiff] for such infringement,
> then [Defendant] would have no ability to recover
> those damages if at a later date the PTO determined
> that the [ ] patent is invalid.

_Bausch & Lomb, Inc. v. Alcon Lab., Inc.,_ 914 F.Supp.
951, 952 (W.D.N.Y.1996). The Court finds such a
possibility to be, at a minimum, a highly undesirable
outcome.

Finally, the Court finds that the stay will result in the
simplification of issues in this case. As explained by
the Federal Circuit, "[o]ne purpose of the
reexamination procedure is to eliminate trial of [the
issue of patent claim validity] (when the claim is
canceled) or to facilitate trial of that issue by
providing the district court with the expert view of
the PTO (when a claim survives the reexamination
proceeding)."_Gould v. Control Laser Corp.,_ 705 F.2d
1340, 1342 (Fed.Cir.1983), _cert. denied,_464 U.S.
935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). The
_Broadcast_ court, elaborating on this point, explained:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Shifting the patent validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)).

The Court believes that it will benefit from the PTO's evaluation of how the previously unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.

**\*6** The Court finds that, especially in this case, the reexamination process has the potential to significantly narrow the issues for trial because of the impending expiration of the '184 Patent. While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the proper conclusion. It is enough to note that when reexamination is requested

by a third party, as in this case, all claims are confirmed only 29% of the time. (*See* PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.) Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process.[FN2]

> FN2. Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant reexamination (a decision which should issue no later than October 30, 2007), this Court would immediately lift the stay and these proceedings would continue-a relatively insignificant 2-month delay being all that would result.

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the *Broadcast* court explained in its discussion of the possibility of prejudice from entering a stay:

If the PTO does not invalidate or otherwise alter the claims of the [ ] patent, the Plaintiffs' legal remedy remains unaffected .... Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Motson,* 2005 U.S. Dist. LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting *Pegasus Dev. Corp.,* 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

2006 U.S. Dist. LEXIS 46623, at *32-33. Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                 Page 6
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART.**With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent. The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. # 182], which is calendared for hearing on October 12, 2007. As was discussed above in Section I, the Court will also continue to hear B & D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis Dearing's attorney work product [Doc. # 240], which is calendared for hearing on November 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007. All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

**\*7** Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision. If the PTO declines B & D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates. If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings. During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising the Court of any change in the status of those proceedings.

### IV. Motion for Partial Summary Judgment

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be a single enterprise for purposes of patent infringement liability. [Doc. # 204.] The motion is presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's motion to be premature. Accordingly, the Court hereby **DENIES** Plaintiff's motion without prejudice.[FN3]As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion

once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

> FN3. Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. # 204-5] is also **DENIED** as moot.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Sorensen ex rel. Sorensen Research and Development Trust v. Black and Decker Corp.
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 422697 (N.D.Ill.), 70 U.S.P.Q.2d 1319

**H** Tap Pharmaceutical Products, Inc. v. Atrix
Laboratories, Inc.
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern
Division.
TAP PHARMACEUTICAL PRODUCTS, INC.,
Takeda Chemical Industries, Ltd. and Wako Pure
Chemical Industries Ltd., Plaintiffs,
v.
ATRIX LABORATORIES, INC. and Sanofi-
Synthelabo Inc., Defendants.
No. 03 C 7822.

March 3, 2004.

Kimball Richard Anderson, Raymond C. Perkins,
Winston & Strawn LLP, Chicago, IL, William F.
Cavanaugh, Jr., Jeffrey I.D. Lewis, Chad J. Peterman,
Stuart E. Pollack, Patterson, Belknap, Webb & Tyler,
New York, NY, for plaintiffs/counter-defendants.
Steven M. Evans, McGuireWoods LLP, Thomas R.
Mulroy, Jr., Matthew T. Hurst, McGuireWoods LLP,
Thomas Allen Marrinson, James M. Davis, Morgan
Lewis Bockius, Chicago, IL, J. Eric Elliff, Morrison
& Foerster, LLP, Denver, CO, Michael A. Jacobs,
Morrison & Foerster, San Francisco, CA, Richard P.
Pettus, Brian P. Murphy, Pamela C. White, Morgan,
Lewis & Bockius, New York, NY, for
defendants/counter-claimants.

*MEMORANDUM OPINION AND ORDER*

ZAGEL, J.
*1 On November 3, 2003, Plaintiffs Tap
Pharmaceutical Products Inc. ("TAP"), Takeda
Chemical Industries, Ltd. ("Takeda"), and Wako Pure
Chemical Industries, Ltd. ("Wako") filed suit against
Defendants Atrix Laboratories, Inc. ("Atrix") and
Sanofi-Synthelabo, Inc. ("Sanofi") alleging
infringement of United States Patent No. 4,728,721
("'721 patent").[FN1] Prior to filing this suit, Plaintiffs
successfully pursued a similar claim against
Oakwood Laboratories, L.L.C. ("Oakwood") who
have subsequently requested reexamination of the
'721 patent by the Patent and Trademark Office
("PTO"). A second request for reexamination was

made by an independent, undisclosed party. Both of
these requests were granted before the instant suit
was filed. Because of these two pending
reexaminations, Defendants now move to stay these
proceedings pending the resolution of the PTO's
proceedings.

> FN1. Takeda and Wako are joint owners of
> the '721 patent and TAP is their exclusive
> licencee.

Determining whether to grant a stay pending the
outcome of the PTO's reexamination is a matter
soundly within my discretion. *Gould v. Control Laser
Corp.,* 705 F.2d 1340, 1341 (Fed.Cir.1983); *Emhart
Industries, Inc. v. Sankyo Seiki MFG. Co., LTD.,* 3
U.S.P.Q.2d (BNA) 1889 (N.D.Ill.1987). When ruling
on such a stay, courts have considered the following
factors: (1) whether a stay will unduly prejudice or
tactically disadvantage the non-moving party, (2)
whether a stay will simplify the issues in question
and streamline the trial, and (3) whether a stay will
reduce the burden of litigation on the parties and on
the court. *Wireless Spectrum Techs., Inc. v. Motorola
Corp.,* 57 U.S.P.Q.2d (BNA) 1662, 1663
(N.D.Ill.2001). I find each of these factors weighs in
favor of staying these proceedings.

*1. Prejudice to the Plaintiff*

Plaintiffs have known from the start of this case three
months ago that the pending reexaminations could
create grounds for a stay. As of yet, this case has not
progressed beyond the initial pleadings stage; the
parties have not engaged in any discovery and have
not filed any other substantive motions. Since the
litigation is at such an early stage and since Plaintiffs
had notice of the pending reexaminations, I find they
will not be unduly prejudiced by a stay. *See Wireless
Spectrum,* 57 U.S.P.Q.2d (BNA) at 1664;*Implant
Innovations v. Noblpharma AB,* No. 93-C-7489, 1994
U.S. Dist. LEXIS 2033 at *9-10 (N.D.Ill. Feb. 24,
1994).

Plaintiffs argue that despite this, they still will suffer
irreparable harm from the ensuing delay. Plaintiffs
point out that the '721 patent may expire before the

**EXHIBIT 2**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 422697 (N.D.Ill.), 70 U.S.P.Q.2d 1319

PTO's reexamination is completed, depriving them of any injunctive remedy. However, even if I deny the stay, the patent may still expire before a trial is completed. This is a large and likely complicated patent case with a potential damage award that could reach into the hundreds of millions of dollars (P. Resp. p. 12). In my experience, it is not unusual for such cases to remain in the pretrial stages for two to three years.[FN2]Alternatively, it is possible that the reexamination will simplify these proceedings and ultimately make up for any delay that has been caused.

> FN2.The '721 patent is set to expire on May 1, 2006, a little more than two years from today's date.

*2 Next, the Plaintiffs argue that the delay will allow the alleged infringing product to gain market share, making damages greater and more difficult to collect. Given that A trix is a company with relatively few assets, Plaintiffs must have already considered the difficulties involved with enforcing a damages award against Sanofi, a French corporation. Any period of delay will not materially alter the need to pursue damages from Sanofi.

*2. Simplification of the Issues*

As the Federal Circuit has explained, "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings).*Gould,* 705 F.2d at 1342. The validity or invalidity of the '721 patent and its underlying claims is at issue both in this court and in the reexamination. Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%. If these proceedings are not stayed, there is a substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO. A stay will allow both the parties to take advantage of the PTO's expert analysis of prior art and may limit or narrow the remaining issues.

*3. Reduction of the Burden Created by Litigation*

There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.

This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of the issues will allow both parties to conserve time and resources. *Emhart,* 3 U.S.P.Q.2d (BNA) at 1890.

For these reasons, Defendants' Motion for Stay is GRANTED.

N.D.Ill.,2004.
Tap Pharmaceutical Products, Inc. v. Atrix Laboratories, Inc.
Not Reported in F.Supp.2d, 2004 WL 422697 (N.D.Ill.), 70 U.S.P.Q.2d 1319

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

















AXR    11/14/02    13:31

3:01-CV-01951    PREDICATE LOGIC INC V. DISTRIBUTIVE SOFTWAR

*126*

*O.*

**EXHIBIT 3**

FILED

02 NOV 14 AM 10: 15

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREDICATE LOGIC, INC., | CASE NO. 01cv1951 BTM(CGA) |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY PROCEEDINGS** |
| DISTRIBUTIVE SOFTWARE, INC., | |
| Defendant. | |

17      Defendant Distributive Software, Inc., has filed a motion for stay of proceedings.

18  For the reasons discussed below, Defendant's motion is GRANTED IN PART and

19  DENIED IN PART.

20

21                    I. **BACKGROUND**

22

23      Plaintiff Predicate Logic, Inc. filed this patent infringement action on October 23,

24  2001. Plaintiff claims that Defendant is infringing one or more claims of United States

25  Patent No. 5,930,798 ("'798 Patent"), an invention entitled "Universal Data

26  Measurement, Analysis and Control System," by making, using, importing, offering for

27  sale, and/or selling software products including "Software Suite."

28      At the request of Plaintiff, default was entered against Defendant on January

126

1  7, 2002. On January 17, 2002, Defendant filed a motion to set aside the default. The

2  next few months were spent litigating the issue of the propriety of the default. On May

3  7, 2002, the Court issued its order granting Defendant's motion to set aside default.

4      The Court held a status conference on August 29, 2002, at which time the

5  Markman hearing was set for January 6, 2003. An order filed on September 5, 2002,

6  set forth the various dates for the exchange of claims construction papers.

7      On October 8, 2002, Defendant filed its motion for stay of proceedings.

8  Defendant's motion is based on its Request for Reexamination of the '798 Patent

9  which was filed with the U.S. Patent and Trademark Office ("PTO") on October 7,

10  2002. The Request for Reexamination challenges all 20 claims of the '798 Patent

11  based on the textbook Building Effective Decision Support Systems by Sprague &

12  Carlson ("DSS Reference"), a reference that allegedly was not considered previously

13  by the PTO.

## II. ANALYSIS

16      Courts have inherent power to stay an action pending conclusion of PTO

17  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir.

18  1988). The decision whether to grant or deny a motion to stay proceedings pending

19  PTO reexamination proceedings rests within the sound discretion of the court. GPAC.

20  Inc. v. DWW Enterprises, Inc., 144 F.R.D. 60, 66 (D.N.J. 1992). There is a "liberal

21  policy" in favor of granting motions to stay proceedings pending the outcome of PTO

22  reexamination or reissuance proceedings. ASCII Corp. v. STD Entertainment USA,

23  Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

24      In determining whether to stay litigation pending reexamination by the PTO,

25  courts generally consider the following factors: (1) the stage of litigation, i.e., whether

26  discovery is almost complete and whether a trial date has been set; (2) whether a stay

27  would cause undue prejudice or present a clear disadvantage to the non-moving

28  party; and (3) whether a stay will simplify the issues in question and trial of the case.

2

01CV1951

1  Id. at 63-64.  See also Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y.

2  1999).

3  This litigation has not proceeded so far that it would be unjust to stay the action.

4  Although this action was filed about a year ago, the first six months were spent

5  litigating the issue of default.  Some discovery has been exchanged but discovery is

6  not nearing completion.  Trial has not been set.  Compare Xerox Corp. v. 3Com Corp.,

7  69 F. Supp. 2d 404 (W.D.N.Y. 1999) (denying motion for stay where the case was

8  pending for almost two years and extensive discovery was conducted); Agar Corp. v.

9  Multi-Fluid, Inc., 983 F. Supp. 1126 (S.D. Tex. 1997) (denying motion for stay where

10  the case was pending for one year and nine months, discovery was well under way

11  and trial was set); Wayne Automation Corp. v. R.A. Pearson Co., 782 F. Supp. 516

12  (E.D. Wash. 1991) (denying motion for stay where the trial date was set and

13  defendant conducted extensive discovery).

14  Plaintiff claims Defendant delayed filing its Request for Reexamination to gain

15  a tactical advantage over it.  Plaintiff further claims that the motion for a stay is a delay

16  tactic in keeping with Defendant's alleged discovery misconduct.  Counsel for Plaintiff

17  claims that on July 8, 2002 counsel for Defendant stated that Defendant would be

18  filing a reexamination application.  (Declaration of Andrew D. Skale in support of

19  Opposition, ¶ 8.)  According to Plaintiff, Defendant purposefully delayed filing its

20  Reexamination Request until October in order to obtain information regarding

21  Plaintiff's infringement position while refusing to produce information regarding its

22  invalidity claims.

23  As ordered by the Court, Plaintiff supplied Defendant with an infringement

24  statement on September 27, 2002, and the parties exchanged statements of patent

25  construction on October 31, 2002.  However, Plaintiff claims that Defendant has

26  refused to produce documents and responses to interrogatories regarding

27  Defendant's invalidity claims.  A motion to compel is pending before Magistrate Judge

28  Aaron.

14

1    Defendant denies Plaintiff's contention that Defendant intentionally delayed the

2  filing of the Request for Reexamination.  Defendant claims that although filing for

3  reexamination was one of the options being considered in early July, it did not decide

4  to file for reexamination until August 27, 2002.  (Declaration of John W. Dozier in

5  support of Reply, ¶ 3.)  Defendant informed the Court that it would file for

6  reexamination at the status conference on August 29, 2002.  Defendant also argues

7  that it has withheld production of certain documents and interrogatory responses

8  because they would reveal confidential and proprietary information.  Defendant and

9  Plaintiff have been wrangling over the content of a proposed protective order since

10 July 16, 2002.    Defendant filed a motion for protective order on October 17, 2002,

11 which is currently pending before the Magistrate Judge.

12    For the most part, the papers submitted by Plaintiff and Defendant consist of

13 bickering over who is at fault for the failure to agree on a proposed protective order.

14 As far as the Court is concerned, there is some gamesmanship on both sides and the

15 Court need not enter the fray to decide the instant motion.

16    Based on the facts before it, the Court finds that there is insufficient evidence

17 to conclude that Defendant purposefully delayed filing its Request for Reexamination

18 or that the motion for stay is a delay tactic.  To avoid any prejudice to Plaintiff in

19 connection with the discovery of Defendant's invalidity position, the Court will not stay

20 the *pending* discovery pertaining to Defendant's invalidity claims.  The stay does not

21 apply to the pending motion for protective order or the pending motion to compel as

22 it pertains to Defendant's invalidity claims.

23    Plaintiff also claims that it will suffer prejudice as the result of a stay because

24 it is a small company which will be irreparably harmed by Defendant's alleged

25 continual infringement during the reexamination process. Unfortunately, reexamination

26 can be a drawn out process, resulting in a significant delay in court proceedings.

27 Protracted delay is always a risk inherent in granting a stay, yet courts continue to

28 stay actions pending reexamination.  The general prejudice of having to wait for

4

01CV1951

/5

1   resolution is not a persuasive reason to deny the motion for stay. Moreover,

2   Defendant counters that it would suffer prejudice if the stay is denied because it is a

3   small company which cannot afford to litigate claims that ultimately may be changed

4   or invalidated.

5        Finally, the Court finds that the stay will result in the simplification of issues in

6   this case. As explained by the Federal Circuit, "One purpose of the reexamination

7   procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is

8   canceled) or to facilitate trial of that issue by providing the district court with the expert

9   view of the PTO (when a claim survives the reexamination proceeding)." Gould v.

10   Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983), cert. denied, 464 U.S. 935

11   (1983). The Court believes that it will benefit from the PTO's evaluation of how the

12   DSS Reference impacts the claims of the patent-in-suit.

13        Plaintiff argues that even if the patent-in-suit emerges from reexamination

14   amended, "most of the claim elements would emerge unchanged — likely only a few

15   additional terms would be added." (Memorandum of Points and Authorities in support

16   of Opposition, 15:20-22.) This is mere speculation on Plaintiff's part. It is equally

17   possible that a number of the claims will be significantly modified or canceled or that

18   the patent itself will be invalidated. Accordingly, the Court finds that a stay would be

19   appropriate to avoid the risk of unnecessary litigation and to permit the clarification of

20   issues before this Court.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

01CV1951

16

## III. CONCLUSION

For the reasons discussed above, Defendant's motion for stay of proceedings **[85-1]** is **GRANTED IN PART** and **DENIED IN PART**. With the exception of pending discovery pertaining to Defendant's invalidity claims, the Court hereby stays this action pending reexamination proceedings before the PTO. The stay does not apply to the pending motion for protective order or the pending motion to compel as it pertains to Defendant's invalidity claims. Defendant shall produce all discovery ordered by the Magistrate Judge that is subject to the pending motion. Defendant shall notify the Court when the PTO rejects or accepts Defendant's Request for Reexamination. Any dilatory practices by Defendant in connection with the reexamination proceedings will be grounds for vacating the stay. A status conference shall be held on May 13, 2002 at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: _November 13, 2002_                        _Barry Ted Moskowitz_

                                                **HONORABLE BARRY TED MOSKOWITZ**
                                                United States District Judge

cc:   Magistrate Judge Aaron
      All parties and counsel of record

6

01CV1951

17

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 1440363 (N.D.Cal.)

H Photoflex Products, Inc. v. Circa 3 LLC
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
PHOTOFLEX PRODUCTS, INC., Plaintiff,
v.
CIRCA 3 LLC dba Amvona.com, Defendant.
No. C 04-03715 JSW.

May 24, 2006.

Alfredo A. Bismonte, Bobby T. Shih, Daniel S.
Mount, Mount & Stoelker, San Jose, CA, Michael J.
Hughes, Intellectual Property Law Offices,
Campbell, CA, for Plaintiff.
Warren J. Krauss, James Yuanxin LI, Sedgwick
Detert Moran & Arnold, San Francisco, CA, for
Defendant.

**ORDER GRANTING IN PART AND DENYING
IN PART AMENDED MOTION TO STAY
LITIGATION**

JEFFREY S. WHITE, District Judge.
**\*1** Now before the Court is Defendant Circa 3 LLC
dba Amvona.com's ("Amvona") motion to stay
litigation during the pendency of reexamination of
United States Patent 6,076, 935 (the "'935 Patent").
The Court finds that this matter is appropriate for
disposition without oral argument. See N.D. Civ. L.R.
7-1(b). Accordingly, the hearing set for May 26, 2006
is HEREBY VACATED. Having considered the
parties' pleadings and the relevant legal authority, the
Court HEREBY GRANTS IN PART AND DENIES
IN PART Defendant's motion to stay litigation. In
this action, Plaintiff brings claims for copyright and
patent infringement, as well we claims of unfair
competition and false designation of origin, related to
the manufacture and marketing of high quality
photographic equipment. Count two of the second
amended complaint for patent infringement is
STAYED, but Counts one, three and four for
copyright infringement, false designation of origin
and unfair competition are NOT STAYED.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay
Proceedings Pending Reexamination.**

The patent reexamination statute provides in
pertinent part that "[a]ny person at any time may file
a request for reexamination by the [PTO] of any
claim of a patent on the basis of any prior art cited
under the provisions of section 301."35 U.S.C. § 302.
The PTO must "determine whether a substantial new
question of patentability affecting any claim of the
patent concerned is raised by the request...."35
U.S.C. § 303(a). The reexamination statute further
provides that "[a]ll reexamination proceedings ...
including any appeal to the Board of Patent Appeals
and Interferences, will be conducted with special
dispatch."35 U.S.C. § 305.

The determination of whether to grant a stay pending
the outcome of the PTO's reexamination is soundly
within the Court's discretion. See Tap Pharm. Prods.
Inc. v. Atrix Labs. Inc., 70 U.S.P.Q.2d 1319, 1320
(N.D.Ill.2004) (citing Gould v. Control Laser Corp.,
705 F.2d 1340, 1341 (Fed.Cir.1983)). When ruling
on such a stay, courts consider several factors: (1) the
stage of the litigation, including whether discovery is
or will be almost completed and whether the matter
has been marked for trial; (2) whether a stay will
unduly prejudice or tactically disadvantage the
nonmoving party; and (3) whether a stay will
simplify the issues in question and streamline the
trial, thereby reducing the burden of litigation on the
parties and on the court. Id.; Methode Elecs., Inc. v.
Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist.
LEXIS 20689, at \*5-6 (N.D.Cal. Aug. 7, 2000).
There is a "liberal policy in favor of granting motions
to stay proceedings pending the outcome of USPTO
reexamination or reissuance proceedings."ASCII
Corp. v. STD Entertainment, 844 F.Supp. 1378, 1381
(N.D.Cal.1994).

**B. Early Stage of Litigation Favors a Stay of the
Patent Claim .**

Here, the early stage of this litigation weighs in favor
of granting a stay of the patent infringement portion
of the case. See Target Therapeutics, Inc. v. SciMed
Life Sys., Inc., 33 U.S.P.Q.2d 2022, 2023
(N.D.Cal.1995) (holding that the absence of

**EXHIBIT 4**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1440363 (N.D.Cal.)

"significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F.Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Amvona has served 14 interrogatories and 29 requests for production of documents and Photoflex has served 16 interrogatories and 5 requests for production of documents. No depositions have been taken or scheduled. (*See* Declaration of James Yuanxin Li ("Li Decl."), ¶ 2.) Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q.2d at 2023.*

**C. A Stay Will Not Unduly Prejudice Plaintiff.**

**\*2** In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc.,* 2003 WL 21105073, at \*2 (D.Del. May 14, 2003).

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.,* 983 F.Supp. 1126, 1128 (S.D.Tex.1997) (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). There has been no showing of dilatory motive or tactics.

Accordingly, te Court finds that a stay of the patent claim will not unduly prejudice Plaintiff, and thus this factor also weighs in favor of granting a stay.

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.**

Because the patent-in-suit is currently being reexamined, the Court finds that the patent infringement case should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

However, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a stay would not preserve many resources."*Id.*

Here, in addition to the patent infringement claim, Plaintiff brings claims for copyright infringement, false designation of origin and unfair competition. Simply arguing these claims have no merit, Defendant has failed to address whether there are significant overlapping issues between the patent claim and these other claims whereby a stay of the other claims would reduce the burden of litigation on both the parties and the Court. Thus, the Court finds that Defendant has made no showing upon which the Court could find a stay of those separate causes of action would be justified.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Amvona's motion to stay the patent infringement portion of this case but DENIES the motion as to the remaining claims.

**CONCLUSION**

**\*3** For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Amvona's motion to stay. Count two for patent infringement is stayed from the date of this Order until further notice with the exception of activities relating to or arising out of the judicial settlement conference currently schedule before Magistrate Judge Wayne D. Brazil on May 25, 2006. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1440363 (N.D.Cal.)

reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the '935 Patent, until the stay of the patent infringement claim is lifted.

The Court DENIES the request for a stay as to counts one, three and four.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Photoflex Products, Inc. v. Circa 3 LLC
Not Reported in F.Supp.2d, 2006 WL 1440363 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)

C**Nanometrics**, Inc. v. Nova Measuring
Instruments, Ltd.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
Oakland Division.
**NANOMETRICS, INC.**, Plaintiffs,
v.
NOVA MEASURING INSTRUMENTS, LTD., et
al., Defendants.
**No. C 06-2252 SBA.**
**Docket No. 32.**

Feb. 26, 2007.

Alfredo A. Bismonte, Justin T. Beck, Ronald Craig
Finley, Jeremy Michael Duggan, Beck, Ross,
Bismonte & Finley, LLP, San Jose, CA, for
Plaintiffs.
David Schnapf, Neil A. Smith, Sheppard Mullin
Richter & Hampton LLP, San Francisco, CA, for
Defendants.

**ORDER**

SAUNDRA BROWN ARMSTRONG, United States
District Judge.
**\*1** Before the Court is defendants Nova Measuring
Instruments, Ltd. and Nova Measuring Instruments,
Inc.'s (collectively "Nova") Motion to Stay
Proceedings Pending the Re-examination of the
Patent-in-Suit [Docket No. 32]. After reading and
considering the arguments presented by the parties,
the Court finds this matter appropriate for resolution
without a hearing. For the reasons that follow, the
Court GRANTS Nova's motion.

**BACKGROUND**

On March 29, 2006, plaintiff Nanometrics, Inc. filed
a complaint alleging that Nova is infringing on Patent
No. 34,783 ('783). The parties are competitors in the
business of inventing, designing, manufacturing, and
marketing systems that monitor, measure, and control
processes for the semiconductor manufacturing
industry. On May 22, 2006, Nova counterclaimed.

The '783 patent is the only patent in dispute. The '783
patent issued in 1991 and expires on February 1,
2010. On December 7, 2006, the United States Patent
and Trademark Office (PTO) granted Nova's request
for re-examination of the '783 patent. In light of the
PTO granting a re-examination of the ' 783 patent,
Nova requests the Court stay all proceedings.

**LEGAL STANDARDS**

Re-examination is a procedure by which any person
can request that the PTO re-examine or re-evaluate
the patentability of an unexpired United States patent.
See 35 U.S.C. § 302; see also Broadcast Innovation,
L.L.C. v. Charter Commc'ns., Inc., 2006 WL
1897165, at \*1 (D.Colo.2006). "Congress instituted
the reexamination process to shift the burden or
reexamination of patent validity from the courts to
the PTO. Patent validity is a commonly asserted
defense in litigation and courts are cognizant of
Congress's intention of utilizing the PTO's
specialized expertise to reduce costly and timely
litigation." Canady v. Erbe Elektromedizin GmbH,
271 F.Supp.2d 64, 78 (D.D.C.2002) (citations
omitted).

Courts are not required to stay judicial proceedings
pending re-examination of a patent. It is, however,
within a district court's discretion to do so. See, e.g.,
Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27
(Fed.Cir.1988) (citations omitted) ("Courts have
inherent power to manage their dockets and stay
proceedings, including the authority to order a stay
pending conclusion of a PTO examination"); Patlex
Corp. v. Mossinghoff, 758 F.2d 594, 603
(Fed.Cir.1985); Telemac Corp. v. Teledigital, Inc.,
450 F.Supp.2d 1107, 1110 (N.D.Cal.2006). There is
"a liberal policy in favor of granting motions to stay
proceedings pending the outcome" of re-examination,
especially in cases that are still in the initial stages of
litigation and where there has been little or no
discovery. ASCII Corp. v. STD Entm't USA, Inc., 844
F.Supp. 1378, 1381 (N.D.Cal.1994); see also Robert
H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q.2d
1786, 1788 (E.D.Ark.1991) ("[t]he legislative history
surrounding the establishment of the reexamination
proceeding evinces congressional approval of district
courts liberally granting stays").

**EXHIBIT 5**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)

**\*2** In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. See *Telemac, 450 F.Supp.2d at 1110*;*KLA-Tencor Corp. v. Nanometrics, Inc., 2006 WL 708661, at \*2 (N.D.Cal.2006)*; *IMAX Corp. v. In-Three, Inc., 385 F.Supp.2d 1030, 1032 (C.D.Cal.2005)*. A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. See *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983)*, *cert. denied,464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983)*.

### ANALYSIS

Nova contends that the re-examination process will either make this litigation moot, or it will significantly narrow the issues for resolution. Nanometrics counters that "[a] stay is not warranted because it would merely delay the day of reckoning."Docket No. 38, at 2. Moreover, Nanometrics asserts that Nova has in the past made multiple re-examination requests of patents held by Nanometrics which have largely been unsuccessful.

### 1. Stage of Litigation

Nova's request for stay comes approximately nine months after the patent infringement claim was brought against it. This litigation is, however, still in the early stages. The parties exchanged initial disclosures on November 30, 2006, and a case management conference was held on December 6, 2006. Discovery has commenced, but it has not proceeded beyond this point. No briefing on claim construction has been filed. No dispositive motions have been submitted. And as currently scheduled, trial will not commence until April 28, 2008, at the earliest. This being the early stage of litigation weighs in favor of granting a stay. See, e.g., *KLA-Tencor, 2006 WL 708661, at \*2* (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q 2d 2022, 2023 (N.D.Cal.1995)* (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay);

*ASCII Corp. v. STD Entm't USA, Inc., 844 F.Supp. 1378, 1381 (N.D.Cal.1994)* (granting stay where the parties had undertaken little or no discovery).

### 2. Simplification of the Issues for Trial

There is little doubt that should the PTO find the '783 patent invalid, this action will be rendered moot. See35 U.S.C. § 307(a) (a decision by the PTO that the re-examined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes). Moreover, if the PTO should narrow any of the five claims of the '783 patent, the scope of this litigation may be significantly altered and/or simplified. Statistically, there is a good chance that the PTO will do one of these two things. The PTO cancels all claims in approximately twelve percent of all re-examinations, and changes some claims in approximately sixty-four percent. See *KLA-Tencor, 2006 WL 708661, at \*4*;*see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 WL 1897165, at \*8 n. 8 (D.Colo.2006)* (there is a 74% chance that the PTO will eliminate, amend, or otherwise limit the claims at issue).

**\*3** Waiting for the outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims. See *Target Therapeutics, 33 U.S.P.Q 2d at 2023*;*see also Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at \*2 (D.Del.2003)* (benefits of granting a stay pending re-examination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid); *Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887 (W.D.Okla.1985)*. Along these same lines, if the PTO finds some or all of the claims of the patent are invalid, the Court will have wasted resources and the parties will have spent funds addressing an invalid claim or claims if this action goes to trial prior to the re-examination. See *Softview Computer Prods. Corp. v. Haworth, Inc., 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y.2000)*. On the other hand, if the PTO upholds the validity of the re-examined patent, this is strong evidence that a district court must consider in assessing whether the party

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)

asserting invalidity has met its burden of clear and convincing evidence. *See* *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986); *Broadcast Innovation,* 2006 WL 1897165, at *2 (D.Colo.2006). Accordingly, the second factor also weighs in favor of granting a stay.

### 3. Undue Prejudice or Clear Tactical Disadvantage to Nanometrics

One of Nanometrics's objections to a stay is that "it would merely delay the day of reckoning."Docket No. 38, at 2. It expresses concern that the ' 783 patent is nearing its expiration date of 2010. By statute, the PTO is required to conduct re-examination proceedings with "special dispatch." *See*35 U.S.C. § 305. Nevertheless, several courts have recognized that the re-examination process may be lengthy. *See, e.g., In re Cygnus Telecommc'ns. Tech. LLC Patent Litig.,* 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005) (finding that re-examinations generally take from six months to three years); *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 n. 1 (W.D.N.Y.1999) (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals). Mere delay, without more though, does not demonstrate undue prejudice. Assuming the PTO does not cancel or substantially change the '783 patent, Nanometrics's potential recovery of damages will not be affected by the re-examination proceeding. *See The Laitram Corp. v. NEC Corp.,* 163 F.3d 1343, 1346 (Fed.Cir.1998). Nanometrics will be able to recover for any infringement that occurs prior to 2010. In fact, if the PTO upholds the validity of the patent, then Nanometrics's position is strengthened, and its likelihood of monetary damages will increase. *See Broadcast Innovation, L.L.C.,* 2006 WL 1897165, at *10. Additionally, in this case there is a single patent. Some delay is more than off-set by increased certainty of whether this single patent will survive re-examination and whether there will be any need for litigation.

*4 Nanometrics also objects that, in essence, Nova has abused the re-examination process by utilizing it in other litigation between the parties. As Nanometrics characterizes it, Nova has placed 97 of Nanometrics's patent claims in the re-examination process, with only two claims being rejected and three amended. It appears, however, that Nanometrics

is referring to a total of two patents that have been disputed in other cases, and both of these had claims cancelled or amended. This does not suggest a pattern of strategic abuse of the process by Nova.

More importantly, though, is that the re-examination process is a Congressionally created option of which any person or party may avail themselves. "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art ...." 35 U.S.C. § 302. Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 606 (Fed.Cir.1985). The fact that Nova has employed this statutory option does not itself suggest abuse of it.

Accordingly, Nanometrics has not shown that it will be unduly prejudiced by a stay or that it will it will be subject to a clear tactical disadvantage if a stay is imposed. Nova's motion will therefore be granted. Given the potential duration of the stay however, the motion is granted without prejudice to Nanometric's revisiting the issue with the Court should prejudice accrue, or if factual circumstances change warranting the Court's lifting the stay.

### CONCLUSION

IT IS HEREBY ORDERED THAT Nova's Motion to Stay Proceedings Pending the Re-examination of the Patent-in-Suit [Docket No. 32] is GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.
Not Reported in F.Supp.2d, 2007 WL 627920 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.