Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662

Wireless Spectrum Technologies, Inc. v. Motorola Corp.
N.D.Ill.,2001.

United States District Court, N.D. Illinois, Eastern Division.
WIRELESS SPECTRUM TECHNOLOGIES, INC., Plaintiff,
v.
MOTOROLA CORPORATION, Defendant.
No. 00 C 0905.

Jan. 12, 2001.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.
*1 This is a patent infringement action filed February 14, 2000 by plaintiff Wireless Spectrum Technologies against defendant Motorola Corporation. Wireless holds Patent No. 4,736,453 ("the '453 Patent"), which is entitled "Method for Making Frequency Channel Assignment in a Cellular or Non-Cellular Radiotelephone Communications System." Wireless claims that Motorola has infringed on the '453 Patent by marketing its iDEN products and other cellular communications systems, and it seeks a permanent injunction and damages resulting from the alleged infringement. Motorola filed its answer in April and counterclaimed for a declaration of noninfringement and invalidity.

After this lawsuit was filed, Motorola asked the Patent Trademark Office ("PTO") to declare an interference and adjudicate the priority of invention between the '453 Patent and a pending Motorola patent application (the "Thro Patent") that claims the same subject matter as the '453 Patent. Both parties agreed to delay the progress of this action until the PTO decided whether to institute an interference. The PTO declared Interference No. 104,502 ("the Interference") on August 11, 2000. This case is presently before the Court on Motorola's motion to stay pending the final outcome of the Interference.

Both parties agree that the grant of a stay is within the sound discretion of the Court based on the Court's

inherent power to control its docket. *See Research Corp. v. Radio Corp. of America,* 181 F.Supp. 709, 710 (D.Del.1960) (*citing Landis v. North American Corp.,* 299 U.S. 248, 254 (1936)). In deciding whether to grant a stay, the Court must consider the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case."*United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

Motorola argues that a stay is appropriate in this case because it would eliminate the risk that the Court and the PTO will reach inconsistent results. Motorola is concerned that because a presumption of the validity of the '453 Patent exists in this lawsuit but does not exist in the Interference proceedings, *see Okada v. Hitotsumachi,* 16 U.S.P.Q.2d 1789, 1790 (Bd. Pat.App. & Int.1990), it could suffer undue hardship resulting from a finding of validity in this Court and a finding of invalidity in the PTO. *See Research Corp.,* 181 F.Supp. at 711 (noting the effect of differing burdens in federal district court proceedings versus interference proceedings before the PTO). Motorola also argues that a stay would conserve the Court's and the parties' resources, because the PTO's determination could render this action moot. At the very least, Motorola claims, the Interference could simplify the issues before the Court by permitting the PTO to exercise its expertise in the matters of priority and patentability. Finally, Motorola argues that a stay will not unfairly prejudice Wireless because, by the parties' agreement, this case has not progressed beyond the pleadings stage.

*2 Wireless asserts that the equities militate against a stay of this action. Wireless is primarily concerned that the '453 Patent will expire before the PTO adjudicates the Interference,[FN1] which will prejudice Wireless by eliminating the possibility of obtaining a permanent injunction. Although Wireless admits that simultaneous litigation of the Interference and this action will strain its resources, it claims that this scenario is preferable to losing its right to a permanent injunction. Wireless also claims that a stay will not further the interests of judicial economy because the Interference primarily involves a single

**EXHIBIT 6**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                       Page 2
Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662

piece of prior art to the '453 claims, the Thro Patent, whereas this action will conceivably involve a broader range of issues. Finally, Wireless argues that the risk of inconsistent judgments is extremely low and in any event was precipitated by Motorola itself, which provoked the Interference after the instigation of this lawsuit.

> FN1.The '453 Patent is scheduled to expire in April 2005.

The Court finds that the equities favor a stay. The Court agrees with Motorola that a stay will further the interests of judicial economy and the conservation of the parties' resources. The Interference involves the validity of the '453 Patent, the same issue currently before this Court. If the PTO with its unique expertise determines that all or some of the '453 Patent's claims are invalid, that determination will either dispose of this case entirely or at least aid the Court in adjudicating this case. See American Telephone & Telegraph Co. v. Milgo Electronic Corp., 416 F.Supp. 951, 953 (S.D.N.Y.1976) (staying infringement action becausethe PTO's adjudication of the priority issue "can only aid the court in its determination of this lawsuit"); Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc., 203 F.Supp. 794, 797 (W.D.Va.1962) (staying infringement pending interference because PTO's determination of priority of invention would be "most helpful" to court); Bayer v. Novartis Crop Protection Inc., 55 U.S.P.Q.2d 1509,1511-12 (M.D.La.2000) (staying infringement action pending interference because PTO's expertise would aid court in deciding case on the merits). Under these circumstances, there is no need for either party to spend time and money litigating both here and in front of the PTO at the same time. See Childers, 203 F.Supp. at 796 (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar); Bayer, 55 U.S.P.Q.2d at 1511-12 (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice").

Although the Court is sensitive to Wireless's concern that the Interference may impact its ability to obtain a permanent injunction, Wireless has failed to show either that the Interference is likely to outlast the '453 Patent[FN2] or that damages will not adequately remedy Motorola's alleged infringement in the event an injunction is unavailable. Further, Wireless agreed to suspend the onset of discovery in this action until the PTO determined whether it would declare an Interference.[FN3]Accordingly, this case has not progressed beyond the initial pleadings stage, and there is no indication that a stay would create any tactical advantage or undue hardship for the parties. See Bayer, 55 U.S.P.Q.2d at 1512 (granting stay where lawsuit sat dormant for several months before PTO declared interference and stay would not confer tactical advantage on defendant).Compare Amersham International v. Corning Glass Works, 108 F.R.D. 71, 72 (D.Mass.1985) (denying stay where PTO declared interference 1 1/2 years after infringement suit and extensive discovery); General Foods Corp. v. Struthers Scientific and International Corp., 309 F.Supp. 161, 162 (D.Del.1970) (denying stay where interference proceedings declared one year after lawsuit filed and extensive discovery had already taken place). For this reason and the reasons stated above, the Court stays this lawsuit pending the final outcome of the Interference.

> FN2. The Court has not found and neither party has cited any credible authority as to the likely duration of the Interference.

> FN3. Given Wireless's acquiescence in the suspension of discovery, the Court finds that Motorola's invocation of the Interference following the filing of the lawsuit has not occurred so late in the proceedings to compel the conclusion that Motorola acted solely for the purposes of delay. Cf. Hamilton Industries, Inc. v. Midwest Folding Products Mfg. Corp., No. 89 C 8696, 1990 WL 37642,*1 (N.D.Ill. March 20, 1990) (granting stay pending patent reexamination).

*3 Motorola's motion for a stay [Item 9-1] is granted.

N.D.Ill.,2001.
Wireless Spectrum Technologies, Inc. v. Motorola Corp.
Not Reported in F.Supp.2d, 2001 WL 32852 (N.D.Ill.), 57 U.S.P.Q.2d 1662

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                          Page 1
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

▷Clintec Nutrition Co. v. Abbott Laboratories
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
CLINTEC NUTRITION COMPANY,
Plaintiff/Counter Defendant,
v.
ABBOTT LABORATORIES, Defendant/Counter
Plaintiff.
No. 94 C 3152.

April 14, 1995.

Robert M. Barrett, Robert M. Ward, Paula J. Flint,
Hill, Steadman & Simpson, Chicago, IL, for plaintiff.
George Carter Lombardi, Peter C. McCabe, III, T.
Alexis MacDowall, Winston & Strawn, Chicago, IL,
Eric S. Palles, Div. Counsel, Office of the Gen.
Counsel, Abbott Park, IL, for defendant.

MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.
*1 This is a patent infringement claim filed under 35
U.S.C. § 271 by plaintiff, Clintec Nutrition Company
("Clintec"), against defendant, Abbott Laboratories
("Abbott"). Clintec manufactures and markets a
nutritional formula called Nutrivent under Patent No.
5,166,189 ("the '189 Patent") which is designed for
use in heart patients. Abbott manufactures and
markets a nutritional formula called Pulmocare which
directly competes with Nutrivent. Clintec alleges that
Abbott reformulated Pulmocare from a non-
infringing formula into an infringing one. Clintec
seeks a permanent injunction and damages resulting
from Abbott's alleged infringement.

On January 18, 1995, Abbott filed a counterclaim
seeking a declaratory judgment that the '189 Patent is
unenforceable by reason of inequitable conduct in
obtaining the patent. Specifically, Abbott alleges that
Clintec failed to cite two products as "prior art" and
made material misrepresentations about Nutrivent.
Abbott contends that this conduct entitles it to
judgment on Clintec's claims asserted in the
Complaint.

This case is before the Court on Abbott's Motion to
Stay All Proceedings Except Those Relating to the
Issue of Inequitable Conduct Pending Resolution of
Clintec's Reissue Application.

*Facts*

Briefly, the undisputed relevant facts are as follows:

Clintec is an Illinois partnership whose principal
place of business is in Deerfield, Illinois. Abbott is an
Illinois corporation with its principal office in North
Chicago, Illinois. Ross Products Division ("Ross") is
a division of Abbott with its principal office in
Columbus, Ohio. (Complaint, ¶¶ 2, 3; Counterclaim,
¶¶ 1, 2.)

In 1984, Abbott, through Ross, introduced a specialty
enteral [FN1] product designed for pulmonary patients
under the name of Pulmocare. This product was sold
as formulated for about ten years without any
improvements or alterations. (Abbott's Answer to
Interrogatory 2(B), Plaintiff's Exh. B.) In 1992,
Clintec introduced a specialty enteral product for
pulmonary patients that, it alleges, remedied certain
deficiencies in Pulmocare, under the trademark
Nutrivent. On November 24, 1992, the U.S. Patent
and Trademark Office ("PTO") issued Patent No.
5,166,189 entitled, "ENTERAL DIET FOR
PATIENTS WITH PULMONARY DISEASE," to
Susan L. Trimbo, W. Bruce Rowe and M. Umberto
Bracco. Patent '189 was then assigned to Clintec,
and Clintec maintains that Nutrivent is protected by
that patent. On May 20, 1994, Clintec brought the
instant action, pursuant to 35 U.S.C. § 271, alleging
that Abbott began marketing a reformulated
Pulmocare product sometime in 1993 so that it now
infringes on Clintec's '189 Patent.

On November 23, 1994, Clintec filed a reissue
application for the '189 Patent pursuant to 35 U.S.C.
§ 251. Section 251 allows a patent owner to file a
reissue application to enlarge the scope of the claims
of the original patent if the reissue application is filed
within two years of the grant of the original patent.
This reissue application is presently before the PTO.

**EXHIBIT 7**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

*Abbott's Motion To Stay All Proceedings Except
Those Relating to Inequitable Conduct*

Abbott's motion is essentially two motions rolled into
one: first, Abbott seeks a stay of Clintec's underlying
infringement case including a stay of discovery
pending disposition by the PTO regarding Clintec's
reissue application; and, second, Abbott seeks to have
the issue of inequitable conduct bifurcated and to
have litigation, including discovery, proceed as to
this issue.

### A. *Motion to Stay*

Both sides agree that in the interests of justice the
Court may, in its discretion, exercise its inherent
power to stay a cause of action. *See Ethicon, Inc. v.
Quigg*, 849 F.2d 1422 (Fed.Cir.1988). In deciding a
motion to stay, the Court must weigh the competing
interests: *i.e.,* the possible damage of granting a stay
versus the hardship or inequity of forcing a case
onward; and the Court must consider whether the
stay will result in a simplification or a complication
of the issues, proof and questions of law. *Teradyne,
Inc. v. Hewlett-Packard Co.,* No. 91-C-0344, 1993
U.S.Dist. LEXIS at *21 (N.D.Cal. Jan. 7, 1993).

Abbott argues that these competing interests favor a
stay in this case. Most compelling is the fact that the
reissue application filed by Clintec re-presents the
original 21 claims in addition to 35 new claims;
therefore, the PTO's reexamination will necessarily
involve a reconsideration of the patent in the same
manner as the original application.[FN2] Based on such
a reexamination, the PTO could expand or reduce
Clintec's claims which obviously could ultimately
affect the claims in this case. In fact, it appears that
the likelihood of a change in the '189 Patent is
substantial; the *Teradyne* court found that "in 77
percent of all reexamination applications, the claims
are either amended or cancelled during
reexamination." *Teradyne* *22, quoting *Output
Technology Corp. v. Dataproducts Corp.,*1991 WL
332547, 22 U.S.P.Q.2d 1072, 1074
(W.D.Wash.1991).

**\*2** Abbott contends that there are seven distinct
advantages to staying the pending patent litigation
and allowing the PTO to examine the reissue
application:

1. All prior art presented to the Court will have been
first considered by the PTO with its particular
expertise;

2. Many discovery problems relating to prior art can
be alleviated by PTO examination;

3. In those cases resulting in effective invalidity of
the patent, the suit will likely be dismissed;

4. The outcome of the reexamination may encourage
a settlement without further use of the Court;

5. The record of examination would likely be entered
at trial, thereby reducing the complexity and length of
the litigation;

6. Issues, defenses, and evidence will be more easily
limited in pre-trial conferences after reexamination;
and

7. The cost will likely be reduced for both parties and
the Court.

*Fas-Line Sales & Rentals, Inc. v. E-Z Lay Pipe
Corp.,* 1979 WL 25005, 203 U.S.P.Q. 497, 499
(W.D.Okla.1979), quoting *Fisher Controls Co. v.
Control Components, Inc.,* 443 F.Supp. 581, 582
(S.D.Iowa 1977).

Clintec agrees, albeit reluctantly, that either this case
or the reissue application should be stayed and that
the two cases should not proceed simultaneously;
however, it argues for a stay of the reissue
application. Clintec's main concern seems to be that if
the case here is stayed, it will be placed at a tactical
disadvantage if it is forced to defend against Abbott's
inequitable conduct claim while being unable to
pursue its own claims for infringement. Clintec
suggests that if the stay will result in a tactical
disadvantage to Clintec, the stay must be denied.
*ASCII Corp. v. STD Entertainment USA,* 844 F.Supp.
1378, 1380 (N.D.Cal.1994) (holding that it is within
the discretion of the court to deny a motion to stay if
it will impose severe prejudice on one side).
However, in *ASCII,* the court found that a stay
pending the outcome of a PTO reexamination and/or
reissuance proceedings would facilitate resolution of
the infringement dispute because, among other

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

things, the case was in its initial stages, little discovery had been taken, no trial date had been set and the parties had not agreed to go forward with the case. *ASCII Corp.,* 844 F.Supp. at 1381.

Similarly, in this case, suit was filed in May, 1994 and to date two depositions have been taken and some paper discovery has been completed; no trial date has been set, and the parties have not agreed to go forward with the case.

It should be noted that in each of the cases cited by Abbott in support of its motion to stay, the reexamination was requested by the same party that sought the stay. In this case, Clintec contends that the reissue application was filed in order to broaden its patent and has no bearing on this infringement suit which is focused solely on past actions of Abbott. Clintec asserts that under the MANUAL OF PATENT EXAMINING PROCEDURE, § 1442.02 "Litigation Not Stayed" (Defendant's Exh. 2), "in order to avoid duplication of effort, action on reissue applications in which there is an indication of concurrent litigation will be suspended automatically unless a stay of the litigation is in effect, the litigation is terminated, there are no significant overlapping issues or the applicant desires the application to be examined at that time." In other words, Clintec argues that it filed the reissue application with the intent that the reexamination be stayed pending resolution of this infringement suit so no duplicative proceedings will result.

*3 However, given the fact that the entire '189 Patent is now before the PTO for reexamination and given the statistical evidence set forth in *Teradyne,* there is at least a decent possibility that the patent may be restricted (notwithstanding Clintec's strong belief that the PTO will only broaden the patent based on new claims-there are no guarantees). It is clear the reissue application issues could overlap to this case. Therefore, in the interests of judicial economy it does not make sense, and Clintec provides no good reasons, to proceed with the infringement suit when the patent on which it is based could be altered after the PTO reexamines it.

A stay will not work any apparent undue hardship or prejudice to Clintec: discovery has been limited, no trial date has been set and Clintec has a remedy at law (damages) which will not be prejudiced by a stay

pending PTO reexamination of the '189 Patent. Courts have noted that one of the purposes of the reexamination procedure is to eliminate trial of an issue (when a claim is cancelled) or to facilitate trial of that issue by providing the expert view of the PTO (when the claim survives reexamination), and have uniformly granted and upheld stays in such circumstances as these. See *Gould v. Control Laser Corp.,* 705 F.2d 1340 (Fed.Cir.1983). Clintec's main argument pertains to the next stage of this motion-whether or not to bifurcate the inequitable conduct part and to proceed with that part of the case while the underlying infringement suit is stayed.

B. *Motion To Bifurcate and To Proceed On the Issue of Inequitable Conduct*

*4 Under FED.R.CIV.P. 42(b), the Court has broad discretion in granting separate trials and may order a separate trial of any issue "in furtherance of convenience or to avoid prejudice." The movant bears the burden of justifying bifurcation. *See Output Technology Corp.,* 22 U.S.P.Q.2d at 1073. In evaluating bifurcation issues, courts have been mindful to preserve the inviolate right to a jury trial guaranteed by the Seventh Amendment to the Constitution. Consequently, the Court's discretion to order an equitable issue tried first is narrowly limited and must be exercised to preserve a jury trial.

Abbott seeks bifurcation of its inequitable conduct counterclaim from the issues of infringement and validity presented in Clintec's Complaint. The thrust of Abbott's motion is based on convenience grounds: specifically, if this Court finds that Clintec engaged in inequitable conduct in the prosecution of the '189 Patent, the patent would be unenforceable and Clintec's claims would be moot regardless of the outcome of the reissue reexamination. *Kingsdown Med. Consultants v. Hollister, Inc.,* 863 F.2d 867, 874 (Fed.Cir.1988). Further, Abbott argues that the issue of inequitable conduct is sufficiently separate from the issues regarding the infringement action. Abbott contends that the inequitable conduct issue relates to the *enforceability* of the patent; whereas the infringement issues relate to the scope of the patent and that the PTO's reexamination will only address the scope of the patent.

It is undisputed that inequitable conduct resides in failure to disclose material information, or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence. *Kingsdown Med. Consultants,* 863 F.2d at 874.

Abbott identifies four areas of information which it alleges constitute inequitable conduct by Clintec in obtaining the '189 Patent:

1. Failure to cite, intentionally or through gross negligence, a product called TraumaCal as prior art to the PTO even though it had been marketed to patients with pulmonary disease since 1983.

2. Failure to cite a product known as Respalis as prior art to the PTO even though it was marketed in France to pulmonary patients since 1988 and cited in brochures and "looks surprisingly like Nutrivent."

3. Clintec's representation that its composition has been found to provide advantages over prior art formulas was false or seriously misleading (in light of inventor Susan Trimbo's deposition testimony).

4. Clintec's assertion in the original application that the critical difference between Nutrivent and Pulmocare was the "need for at least 18% caloric distribution from the protein source" was false (given Susan Trimbo's deposition testimony).

Abbott contends that because the PTO no longer evaluates reissue applications on the basis of inequitable conduct, this is an issue that must be decided in the courts.   *See* Manual of Patent Examining 1448 (Abbott's Memorandum in Support, Exh. 4). Abbott asserts that the issue is whether Clintec withheld such material during prosecution of the '189 Patent, with the intent to deceive the PTO. If so, the '189 Patent is unenforceable and Clintec's infringement suit is moot.

*5 Clintec responds that Abbott's motion fails to satisfy the three prong analysis required for bifurcation:

1. The movant must make a *prima facie* showing of success;

2. Success by the movant would save time by

eliminating the necessity for resolution of more complex issues;

3. Further delay will not prejudice the non-moving party.

*See Choat v. Rome Indus., Inc,* 467 F.Supp. 378 (N.D.Ga.1979), citing *Ludlow Corp. v. Textile Rubber & Chem Co., Inc.,* 77 F.R.D. 752 (N.D.Ga.1978).

Specifically, Clintec asserts that Abbott has not satisfied parts 1 or 3: Abbott allegedly fails to make a *prima facie* showing of success; in addition, Clintec asserts that it will be unduly prejudiced by having to proceed on the inequitable conduct suit while the infringement suit awaits PTO reexamination.

Clintec attacks the sufficiency of each of Abbott's four allegations of inequitable conduct contending that TraumaCal and Respalis are not relevant prior art and that the alleged false information was not in fact false. Essentially, Clintec argues the merits of Abbott's suit. While it does not assert that any of the four allegations, if true, would not constitute inequitable conduct as alleged, Clintec instead attempts to refute their existence, relevance and effect. At this stage of the case, it is not possible for the Court to make a logical determination of the likelihood that Abbott will prevail on its counterclaim. The Court can and does determine that Abbott's allegations, if true, do state a cause of action. Thus part 1 has been satisfied.

On the issue of prejudice if the Court should stay its case and allow Abbott's counterclaim to go forward, Clintec makes a better challenge. As Clintec points out, the issues overlap. Thus, proceeding on one claim and not the other would be grossly unfair. It is unfair and inconvenient to bifurcate cases or discovery where overlapping issues exist. *Willemijn Houdstermaatschaapij BV v. Appollo Computer Inc.,* 707 F.Supp. 1429 (D.Del.1989); *White Chemical Corp. v. Walsh Chemical Corp.,* 116 F.R.D. 580 (W.D.N.C.1987). As Clintec points out, separate trials should be the exception and not the rule in patent cases, *Kennecott Corp. v. Kyocera Intern. Inc.,* 1988 WL 268170, 7 U.S.P.Q.2d 1911 (S.D.Cal.1988), and should not be ordered unless clearly necessary. *Wolens v. F.W. Woolworth Co.,* 1980 WL 30264, 209 U.S.P.Q. 569 (N.D.Ill.1980).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                            Page 5
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

Clintec successfully distinguishes Abbott's case law by noting that in *Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1214 (Fed.Cir.1987)*, there was no dispute as to prior art and that the issues of validity and infringement were truly separate from the inequitable conduct claim-thus, bifurcation was proper. By contrast, here there is a dispute over whether or not TraumaCal and Respalis were in fact prior art and the resolution of that dispute directly affects the validity of the patent and the enforceability of the patent, Thus, the validity and inequitable conduct issues are intertwined.

*\*6* The Court also notes that a jury has been requested in this case. The issues of whether TraumaCal or Respalis is prior art, an issue in Clintec's infringement case, should be decided by a jury. When so decided, the Court may be bound by this finding of fact in Abbott's non-jury claim of inequitable conduct. *Therma-Tru Corp. v. Peachtree Doors Inc., 44 F.3d 988, 995 (Fed.Cir.1995)*. By proceeding only with Abbott's counterclaim, the Court, thus, effectively eliminates Clintec's jury request on the issue of prior art. Such a situation certainly prejudices Clintec's position and for this reason bifurcation does not appear to be proper here.

Even if the issue of inequitable conduct were found to be sufficiently separate from issues of validity and patent interpretation and even if bifurcation were proper, the issue of whether to stay the inequitable conduct suit would remain. On one hand, Abbott's allegations of inequitable conduct, if proven by clear and convincing evidence, would provide a defense to an infringement suit by rendering the '189 Patent unenforceable, and Clintec will ultimately have to address this issue. On the other hand, it is interesting to note that the first two reasons given by Abbott for staying the infringement suit were:

1. All prior art presented to the Court will have been first considered by the PTO with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by PTO examination.

What's good for the goose is good for the gander. Such advantages could also be found for staying the Abbott's inequitable claim suit. Since prior art will necessarily be considered by the PTO during the reexamination process in evaluating the reissue application (not in terms of inequitable conduct but as a matter of determining the validity of Clintec's claims),[FN3] it would seem to make sense to stay Abbott's claim for inequitable conduct which relies heavily on allegations regarding prior art. It is undisputed that Abbott must prove the two elements of materiality and intent to prove its claim for inequitable conduct. The PTO's reexamination of the patent-including prior art-is likely to consider and provide an expert opinion as to prior art such as TraumaCal and Respalis. The arguments in favor of staying Clintec's suit apply with equal vigor to Abbott's suit.

Therefore, the Court orders that all proceedings in this case including discovery, as to both the complaint and the counterclaim, are stayed until the disposition of the plaintiff's Reissue Application, except for the following:

1. Plaintiff shall provide defendant with copies of all documents filed with the PTO and transcribed interviews with PTO examiners in connection with the Reissue Application.

2. In the event either party has cause to believe that any evidence will become inaccessible or substantially more costly to obtain, then upon such cause shown by motion to the Court, this order may be amended.

> FN1. Enteral or Enteric is broadly defined as relating to the intestines; can also refer to a medicinal preparation treated to pass through the stomach unaltered and disintegrate in the intestines. WEBSTER'S MEDICAL DESK DICTIONARY, 213 (1st ed. 1986).

> FN2. Patent Office Regulation 1.176 "Examination of Reissue" directs, in pertinent part:

> [a]n original claim if represented in the reissue application, is subject to reexamination, and the entire application will be examined in the same manner as the original applications ...

30

Not Reported in F.Supp.                                                              Page 6
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

> 37 C.F.R. § 1.176 (1993). (Defendant's
> Motion in Support, Exh. 1.)

> FN3. Defenses raised against validity of the
> patent, on charges of fraud or inequitable
> conduct in litigation involving the patent
> would normally be material to patentability
> of the reissue application ... and should, at
> least be fully described, or submitted [to the
> PTO]. *See*MANUAL OF PATENT
> EXAMINING PROCEDURE, § 1442.04
> "Litigation Involving Patent." (Defendant's
> Exh. 2.)

N.D.Ill.,1995.
Clintec Nutrition Co. v. Abbott Laboratories
Not Reported in F.Supp., 1995 WL 228988 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

▷ **Broadcast Innovation**, L.L.C. v. Charter
Communication, Inc.
D.Colo.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Colorado.
**BROADCAST INNOVATION**, L.L.C., and IO
Research Pty, Ltd., Plaintiffs and Counter-
Defendants,
v.
CHARTER COMMUNICATIONS, INC., Defendant
and Counter-Plaintiff.
**Civil Action No. 03-CV-2223-ABJ-BNB.**

July 11, 2006.

Barry Alan Schwartz, Kamlet, Shepherd, & Reichert,
LLP, Denver, CO, Corby R. Vowell, Edward W.
Goldstein, Goldstein & Faucett, LLP, Houston, TX,
Edward R. Nelson, III, Jonathan Tad Suder,
Friedman, Suder & Cooke, Fort Worth, TX, for
Plaintiffs and Counter-Defendants.
David C. Doyle, Jose L. Patino, Morrison & Foerster,
LLP, San Diego, CA, J. Eric Elliff, Morrison &
Foerster, LLP, Denver, CO, Robert M. Harkins,
Morrison & Foerster, San Francisco, CA, for
Defendant and Counter-Plaintiff.

**ORDER GRANTING DEFENDANT'S MOTION
FOR STAY PENDING REEXAMINATION OF
U.S. PATENT 6,076,094 BY UNITED STATES
PATENT AND TRADEMARK OFFICE**

ALAN B. JOHNSON, District Judge.
*1 The above-captioned matter comes before the
Court on Defendant Charter Communications, Inc.'s
Motion to Stay Pending Reexamination of the U.S.
Patent 6,076,094 By United States Patent and
Trademark Office. Plaintiffs Broadcast Innovation,
LLC and IO Research Pty, Ltd. have resisted this
motion, timely filing a response on June 29, 2006.
After careful consideration of the motion, briefs and
governing authorities, and being otherwise fully
advised in the premises, the Court **FINDS** and
**ORDERS** as follows:

**Background**

**I. Procedural History**

In this patent infringement and validity action,
Plaintiffs Broadcast Innovation, LLC and IO
Research Pty, Ltd. (hereinafter "Plaintiffs") allege
that Charter Communications, Inc. (hereinafter
"Charter") infringed directly or indirectly claims 8,
15, 22, 29 of United States Patent No. 6,076,094
(hereinafter "'094 patent"), a patent Charter claims is
invalid for numerous reasons, not the least of which
being anticipation and obviousness based on prior
art.[FN1] The '094 patent claims a complex distributed
database system with applicability to data
broadcasting and data casting communications
media.[FN2]

> FN1. The Court also notes that Charter has
> joined in and adopted a host of pleadings
> filed both in the present action and in the
> case of *Broadcast Innovation, L.L.C. v.
> Echostar Communication Corp.,* 01-cv-
> 2201-ABJ-BNB (D.Colo), a case also
> involving the '094 patent which has been
> stayed pending final resolution of the
> present case.

> FN2. The Court eschews an exhaustive
> recitation of the adjudicative facts
> surrounding the merits of this case, focusing
> instead on the posture of the present motion
> and response.

On June 8, 2006, Charter requested that the United
States Patent and Trademark Office (PTO) reexamine
the '094 patent to determine whether the four asserted
claims in the present case-claims 8, 15, 22 and 29-are
invalid. The information provided to the PTO as a
basis for reexamination includes, among other
materials, three prior art references that form the
basis of Charter's summary judgment motion before
this Court: (1) the 1989 World System Teletext and
Data Broadcasting Technical Specification; (2) a
1986 article entitled *"BBC Datacast-A New
Generation of Data Transmission Networks Using
Broadcast Video";* and (3) a 1988 article authored by
John Lilley entitled *"Can Data Broadcasting
Actually Sell Itself?"* It is undisputed that this art was
not before the PTO during its original examination of

**EXHIBIT 8**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

the application that eventually issued the '094 patent. Unsurprisingly, Charter asks this Court to stay the case awaiting the fully-informed, expert view of the PTO.

## II. Patent Reexamination

### A. Overview

Reexamination is a procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302. A request for patent reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." *Id.* § 303(a). Typically, the cited prior art patents or printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination. The examiner is obligated to do so "with special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a).

**\*2** Within approximately three months of the filing of the reexamination petition, the PTO will determine whether the request raises a "substantial new question of patentability" affecting any claim or claims of the patent. *Kaufman Co. v. Lantech Inc.,* 807 F.2d 970, 976 (Fed.Cir.1986). The examiner, utilizing his expertise, determines if such a "new question" exists by comparing the prior art of record in the original patent application with the prior art cited in the request for reexamination (although the examiner is not limited to that information). 35 U.S.C. § 303(a). If the prior art patents and/or printed publications are "material" to the reexamination of at least one claim of the patent, a substantial new question of patentability exists.[FN3] Thereafter, the parties are given the opportunity to provide position statements to the PTO, and the PTO reexamines the patent claims in *ex parte* fashion. If the Commissioner decides *not* to institute a reexamination proceeding, the decision is final and nonappealable.

> FN3. The materiality standard is fairly deferential to the PTO. Prior art is "material" to the examination of a claim of the patent if "there is a substantial likelihood

that a reasonable examiner would consider the prior art patent or printed publication *important* in deciding whether or not the claim is patentable."UNITED STATES PATENT AND TRADEMARK OFFICE,*Manual of Patent Examination Procedure* § 2294 (8th ed., rev.1, October 2005) (emphasis added).

Importantly, a decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes. 35 U.S.C. § 307(a). Cancellation through reexamination, however, is available only when the claims at issue are unpatentable over prior art patents and publications. 35 U.S.C. §§ 301-02. Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence. *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986). After a decision sustaining the validity of the claims, this burden becomes more difficult to satisfy. *Id.*[FN4]

> FN4. Relevant are the Federal Circuit's comments in *American Hoist v. Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350 (Fed.Cir.1984):
>
> > [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become *more difficult* to sustain-a fact likewise to be taken into account by the trial judge.
>
> *Id.* at 1354.

During the course of a stay, the court retains jurisdiction to respond to changing factual circumstances with appropriate orders. Thus, if a stay is granted prior to the decision from the Patent Office as to whether a substantial new question of patentability exists, the court can issue an order lifting the stay upon a negative determination, thereafter deciding all pending motions and, if

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

necessary, proceeding to trial. *See, e.g., Grayling Indus. v. GPAC Inc.,* 19 U.S.P.Q.2d 1872, 1874 (N.D.Ga.1991); *Brown v. Shimano American Corp.,* 18 U.S.P.Q.2d 1496, 1496 (C.D.Cal.1991). Similarly, the court may dissolve the stay when preliminary reports from the Patent Office reveal that some of the claims at issue will survive reexamination. The court would then await the PTO's decision for guidance on pending motions and, if necessary, trial. *See, e.g.,* *Purolite Int'l, Ltd. v. Rohm and Haas Co.,* 24 U.S.P.Q.2d 1857, 1860 (E.D.Pa.1992); *Rohm and Haas Co. v. Brotech Corp.,* 24 U.S.P.Q.2d 1369, 1372 (D.Del.1992). If no claims survive, neither does the court's work.

### B. Scope and Purpose: Expertise

**\*3** "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation."*Canady v. Erbe Elektromedizin GmbH,* 271 F.Supp.2d 64, 78 (D.D.C.2002) (citing H.R. REP. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460)); *see also* Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach A Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 GEO. WASH. L.REV. 172, 172 (1997) ("Congress decided that the often-asserted validity issue, which can involve intricate technological questions, deserved special treatment. Thus, Congress established a patent reexamination procedure that allows the Patent and Trademark Office, instead of a district court, to consider validity issues that the PTO overlooked during the initial examination.").

Shifting the patent validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987).

Early drafts of the reexamination statute expressly provided for a stay of court proceedings during all reexamination proceedings. *See*S. REP. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. REP. 5075, 96th Cong., 1 st Sess. § 310 (1979); S. REP. 2446, 96th Cong., 2d Sess. § 310 (1980). However, an express provision was ultimately deemed unnecessary because courts already had the power to stay civil actions "to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure."*Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied,*464 U.S. 935 (1983).[FN5]"When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved."*Id.* To no surprise, courts frequently note that "[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays."*Robert H. Harris Co. v. Metal Mfg. Co.,* 19 U.S.P.Q.2d 1786, 1788 (E.D.Ark.1991).

> FN5. The pertinent House report explained as follows:
>
> The bill [35 U.S.C. §§ 301-07] does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R. REP. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463).

**C. Relevant Factors Weighing For Or Against A Stay**

*4 "A motion to stay an action pending the resolution of a reexamination proceeding in the United States Patent and Trademark Office is directed to the sound discretion of the court."*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.,* 1997 WL 94237 (D.Kan.1997); *see also Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). As mentioned above, there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings."*Whatley v. Nike,* 54 U.S .P.Q.2d 1124, 1125 (D.Or.2000); *see also In re Laughlin Products, Inc.,* 265 F.Supp.2d 525, 530 (E.D.Pa.2003) (same).

"In deciding whether to grant a stay, the court must weigh the benefits of the stay against the costs."*Motson v. Franklin Covey Co.,* 2005 WL 3465664, *1 (D.N.J.2005). Courts consider a number of factors in determining whether to stay litigation pending PTO reexamination, including: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) "whether a stay will reduce the burden of litigation on the parties and on the court ."*Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004); *Nexmed Holdings, Inc. v. Block Inv., Inc.,* 2006 WL

149044, *1 (D.Utah Jan. 19, 2006) (citing *In re Laughlin Prods.,* 265 F.Supp.2d at 530);*Brown,* 18 U.S.P.Q.2d at 1496 (detailing the expertise factor).[FN6] No one factor is controlling-the totality of the circumstances governs.

> FN6. While the *Tap Pharmaceuticals* court created a fourth category examining the "burden of litigation on the parties and on the court," see *70 U.S.P.Q.2d at 1320,* most courts merge this inquiry with the "simplification of issues" factor. *Accord Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (collecting cases); *Versa Corp. v. Ag-Bag Intern. Ltd.,* 2001 WL 34046241, *1 (D.Or.2001) (describing this factor as "the orderly course of justice measured in terms of the *simplifying or complicating of issues,* proof, and questions of law which could be expected to result from a stay") (emphasis added).

**Analysis**

**I. Will A Stay Simplify the Issues Before the Court?**

Courts routinely consider the expertise of the Patent Office, under which claim validity will be rigorously reevaluated, as an important factor in determining whether to stay its proceedings. *Accord Gould,* 705 F.3d at 1342;*Middleton, Inc. v. Minn, Mining & Mfg. Co.,* 2004 WL 198669, at *3 (S.D.Iowa 2004); *GPAC Inc. v. D. W.W.Enter, Inc.,* 23 U.S.P.Q.2d 1129, 1134 (D.N.J.1992); *see also Bausch & Lomb Inc. v. Alcon Labs., Inc.,* 914 F.Supp. 951, 953 (W.D.N.Y.1996) ("Because the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."). The technical nature of the patent claims in question increases the utility of PTO expertise, which is further amplified by the need to examine prior art and publications not before the PTO during its original patent examination. *See Brown,* 18 U.S.P.Q.2d at 1496 ("[R]eexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise."). In turn, patent cases *not* hinging upon the consequences of prior art references have less of a need for the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                          Page 5
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

PTO's expertise. *See Emhart Indus., Inc., 3 U.S.P.Q.2d at 1892 n. 3* (distinguishing the matter before it on such grounds, explaining that if "the issue of prior art was involved, the PTO's opinion [would] be invaluable.") (quotation omitted).

**\*5** Confronted with a motion to stay pending PTO reexamination after significant discovery, pretrial conference and trial dates set, a neighboring district court concluded as follows:

The technical expertise provided by the reexamination proceeding ... will be extremely helpful to this Court should further consideration of this matter be necessary. Indeed, the Court invites a final determination by the PTO as to the validity of plaintiff's patent claims. The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld, or to be narrowed in some degree. In any event, the expert view of the Patent Office examiner will certainly benefit this Court. Thus, the Court is of the opinion that a stay of the trial of this matter should be granted to allow the PTO to complete the reexamination proceeding.

*Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 887 (W.D.Okla.1985) (staying trial pending conclusion of the reexamination proceedings).[FN7]

> **FN7.** Also interesting to note is that the patent at issue in *Loffland* appears quite simple when compared to the '094 patent presently before the Court-the technology in *Loffland* consisted of patent covering an elevating catwalk used on drilling rigs. *See Loffland Bros.,* 225 U.S.P.Q. at 886.

Indeed, some courts consider this factor of primary importance. *See, e.g., Dresser Indus., Inc. v. Ford Motor Co.,* 530 F.Supp. 309, 316 (N.D.Tex.1981) ("The major benefit of staying litigation pending reconsideration of a patent under [reexamination] is that it affords the Court the assistance of the Patent Office's specialized expertise on technical questions of validity."); *cf. Pegasus Development Corp. v. Directv, Inc.,* 2003 WL 21105073, \*2 (D.Del.2003) (deciding that by staying a highly technical case

involving computer programming communication systems, "the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency").

The *Loffland Bros.* court also understood the PTO's expertise to have benefits beyond educating the court. That is, simplification may occur by the very nature of the reexamination procedure itself, as claims, arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the parties and the court. The Federal Circuit has explained that a major "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings)."*Gould,* 705 F.2d at 1342 (Markey, C.J.); *see also Canady,* 271 F.Supp.2d at 68 ("[C]ourts often stay proceedings, such as in the instant case, to wait for reexamination results that will simplify litigation by eliminating, clarifying, or limiting the claims.")."If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court."*Middleton, Inc.,* 2004 WL 1968669 at \*3. "This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis."*Id.; see also, e.g., Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed.Cir.2002).

**\*6** Combining these benefits, countless courts have touted the value of streamlining voluminous and complicated patent cases. For example, the court in *Motson* found that the benefits derived from the PTO's reexamination outweighed the fact that much effort had already been expended by the parties:

[E]ntry of a stay, pending reexamination by the PTO, may simplify or even eliminate the need for trial on the remaining validity challenge in this matter. The reexamination procedure has the potential to either uphold or narrow the claims in the plaintiff's patent. In any event, the technical expertise of the PTO examiner may be helpful to the Court should further consideration of the matter be necessary after reexamination.... Although discovery and briefing expenses have already been incurred, a trial at this

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

point on the sole remaining issue in the case may compound those costs unnecessarily if the PTO reexamination eliminates the need for a trial or creates a need to relitigate other issues.

*Motson,* 2005 WL 3465664 at *1-2.

Despite being less than two-and-a-half months from trial and despite the substantial monetary expenditures by each party, the court in *Gioello Enterprises* provided a similar explanation for granting a stay:

Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001. Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions.

*Gioello Enterprises, Ltd.,* 2001 WL 125340 at *1.

This question of "resources" was detailed by the Southern District of New York in *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633 (S.D.N.Y.2000), a case bearing many resemblances to the matter *sub judice.* There, the court addressed a stay pending PTO reexamination of allegedly relevant prior art. While the motion was brought by the *plaintiff* in that case, the instructiveness of the court's language applies equally to the present matter:

Although [defendant] correctly notes that plaintiffs have not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to [defendant] of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not, without more, entitle [defendant] to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds

addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

*7 Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served ... and the Pretrial Order has not yet been prepared. I[t] would be a serious waste of both the parties' and the Court's resources if the ... summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

Third, a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.

*Softview Computer Prods. Corp.,* 56 U.S.P.Q.2d at 1636;*see also Bausch & Lomb Inc.,* 914 F.Supp. at 953 ("If this Court were to deny the stay and proceed to trial, it is possible that the time, resources, and significant efforts of all those involved in such a trial would be wasted. Because a finding by this Court that the '607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. Not only would such a scenario cause Alcon significant harm[,] but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the reexamination is to be conducted "with special dispatch" (35 U.S.C. § 305), I find that a stay of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.").

In the present matter, Charter argues that a stay "will simplify the issues, avoid inconsistent rulings and conserve the resources of the Court and the parties."*Defendant's Motion,* at 7. Broadcast and IO Research, on the other hand, summarily state that the possibility of simplification is "equivocal."

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

*Plaintiff's Response,* at 3. For the reasons detailed above as well as those to follow, the Court finds that this factor weighs heavily in favor of granting a stay.

The heart of this complicated patent case involves the impact of several prior art references-an issue the PTO is far better suited to address given the technology at issue in this case. *Ethicon, Inc., 849 F.2d at 1427.* Moreover, because this prior art was not before the PTO during its original patent examination, the Court would benefit immensely from the PTO analysis of it. *Accord Softview Computer Prods. Corp.,* 56 U.S.P.Q.2d at 1636;*Emhart Indus., Inc.,* 3 U.S.P.Q.2d at 1890, 1892 n. 3;*Indust Wireless Spectrum Techs., Inc. v. Motorola Corp.,* 57 U.S.P.Q.2d 1662, 1663 (N.D.Ill.2001); *Brown,* 18 U.S.P.Q.2d at 1496 (noting that "[t]he PTO is in a better position than the Court to evaluate the validity of the patent [at issue] in view of the prior art references.").

*8 Judged solely by this factor, a stay would further the interests of judicial economy and the conservation of the parties' resources, as well as that of the court. Charter's pending reexamination petition involves the same issues currently before this Court. If the PTO, utilizing its unique expertise, determines that all or some of the '094 claims are invalid, that determination will either dispose of this litigation entirely or at least aid the Court in adjudicating this case. *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.,* 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005) ("A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."). Moreover, "[s]ince the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict."*Gioello Enterprises, Ltd.,* 2001 WL 125340 at *2;*see also Bayer AG v. Novartis Crop Prot. Inc.,* 55 U.S.P.Q.2d 1509, 1511 (M.D.La.2000) (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice"); *Hewlett-Packard Co. v. Acuson Corp.,* 1993 WL 149994, *2 (N.D.Cal.1993) ("Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."); *Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.,* 203 F.Supp. 794, 796 (D.Va.1962) (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar). The Court, unlike the PTO, can exercise its direction to avoid this conflict and potential for waste.[FN8]

> FN8. The Court is also cognizant of the fact that the PTO grants more than nine of every ten petitions for reexamination. *See*UNITED STATES PATENT AND TRADEMARK OFFICE,*Ex Parte Reexamination Filing Data,* at 1, ¶ 5 (Sept. 30, 2005) (noting 91% acceptance out of 7,510 requests). If and when the PTO grants Charter's petition, history also teaches that there is a 74% likelihood that the PTO will eliminate, amend or otherwise limit the claims at issue, which will significantly alter the nature and amount of work for the attorneys, the court and the jury. *See id.* at 2, ¶ 9;*Tap Pharm. Prods. Inc.,* 70 U.S.P.Q.2d at 1320.

## II. Time and Timing

Broadcast and IO Research argue that this factor "is decidedly pro-Plaintiffs," as "[t]rial is less than three months away. *Plaintiffs' Response,* at 5.[FN9] Charter acknowledges the trial setting, but insists that the proximity of trial, standing alone, is not a reason to blindly deny an otherwise appropriate stay.

> FN9. Indeed, Plaintiffs' entire argument regarding this factor consists of that single statement.

This factor, at first glance, likely weighs in favor of the Plaintiffs and thus against a stay. Although discovery is not complete, see *Stipulation Regarding Additional Discovery* at 2, a trial date has been set for September 11, 2006. If these two litigation aspects were all that courts considered when assessing this factor, it might lean towards Broadcast and IO Research. However, courts considering this factor do not stop at discovery and trial settings, but rather, routinely inquire as to the occurrence summary judgment arguments, rulings on summary judgment, and the status of the final pretrial order, among other

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                      Page 8
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

elements. *See, e.g., Gioello Enterprises, Ltd., 2001 WL 125340 at \*1* (noting trial was set, but expressing concern for pending summary judgment motions); *Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636* (same concern as to "extremely voluminous summary judgment motions" and unfinished final pretrial order); *Bausch & Lomb Inc., 914 F.Supp. at 953* (same); *Middleton, Inc., 2004 WL 198669 at \*4* (same).

**\*9** In sum, the proximity of the trial date does not preclude entry of a stay. "Courts have granted stays even where discovery has been completed, and even when a trial date has been scheduled or is forthcoming."*Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc., 68 U.S.P.Q.2d 1755, 1757 (E.D.Mich.2003); see also Perricone v. Unimed Nutritional Services, Inc., 2002 WL 31075868, \*3 (D.Conn.2002)* (noting that courts "have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation"). For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors-be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court. Put simply, trial time doesn't always tell the tale. *See, e.g., Gould, 705 F.2d at 1342* (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc., 2004 WL 198669 at \*10* (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Lofland Bros., 225 U.S.P.Q. at 887* (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *see also Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636* (granting stay; noting that "although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served ... and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., 19 U.S.P.Q.2d at 1789* (granting stay despite the fact that case was set for trial in less than a month); *Motson, 2005 WL 3465664 at \*2* (granting stay despite discovery being complete and summary judgment decided).[FN10]

FN10. A more detailed balancing process was explained by the court in *Ralph Gonnocci Revocable Living Trust,* who ultimately ruled in favor of a stay:

> Undoubtedly the parties have spent considerable time and resources thus far-substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial.

> *Id.* at 1758.

In the present case, although trial is set for mid-September, significant work remains for the parties and the Court. First, numerous voluminous dispositive motions are pending, including, but not limited to, Broadcast and IO Research's motion for summary judgment of infringement, Charter's motion for summary judgment of non-infringement and Charter's motion for summary judgment of invalidity. Furthermore, the parties have recently stipulated to additional discovery, including supplemental document production, supplemental responses to written discovery, supplemental expert reports, rebuttal expert reports, and expert depositions related to those supplemental expert reports. *Stipulation Regarding Discovery And Expert Report Supplementation,* at 2 (filed June 22, 2006). According to this stipulation, the parties hope to conclude this work in late August. *Id.*[FN11] In addition to preparing their final pretrial memorandums and other trial presentations, numerous pretrial filings remain for both parties, including submission of deposition designations, oppositions to more than forty motions *in limine* (according to Charter, and not disputed by Broadcast or IO Research), as well as proposed jury instructions and special verdict forms. Charter argues that

FN11. To this end, the Court fails to see the significance of Plaintiffs' argument that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

39

Not Reported in F.Supp.2d                                                                                    Page 9
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

*Charter* acted as the initiator of the stipulation, for the fact remains that *both* parties stipulated to additional discovery.

**\*10** Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the four asserted claims will survive the reexamination process. The reexamination proceedings before the PTO may well [alter], moot or resolve the issues set for trial in less than three months, and staying the trial pending conclusion of the PTO's review will eliminate the ... additional expense of trial preparation [and the] risk of inconsistent rulings.
*Defendant's Motion,* at 13.

The Court agrees. *See* Tap Pharm. Prods. Inc., 70 U.S.P.Q.2d at 1320 (noting similarly, i.e., "There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of the issues will allow both parties to conserve time and resources."). A more detailed glance at the timing factor reveals, beyond any peradventure of doubt, that a stay is appropriate in this case.

### III. Will A Stay Unduly Prejudice the Nonmoving Party or Present a Clear Tactical Advantage for the Moving Party?

This factor is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*Because they do, this factor weighs heavily in favor or staying the case. The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits. *See, e.g.,* Robert H. Harris Co., 19 U.S.P.Q.2d at 1788.

Plaintiffs make the vague argument that a delay in trial is unfair. However, this argument fails to address the crucial question of the prejudice factor-i.e., will a stay unduly prejudice the legal remedy sought by the nonmovants?Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636;Ingro v. Tyco Indus., Inc., 227 U.S.P.Q. 69, 70 (N.D.Ill.1985). Clearly it will not. If the PTO does not invalidate or otherwise alter the claims of the '094 patent, the Plaintiffs' legal remedy

remains unaffected, and they will have over a decade to exploit the '094 patent. Moreover, if the claims are narrowed, *both* sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g.,* Motson, 2005 WL 3465664 at \*1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev. Corp., 2003 WL 21105073 at \*2). Indeed, the only possibility of irreparable harm to Broadcast and IO Research would exist if the Court chose *not* to stay the case. That is, if the Court finds that the '094 patent is valid and that Charter has infringed it, and orders Charter to pay damages to Broadcast and IO Research, then Broadcast and IO Research "would have no ability to recover those damages if at a later date the PTO determine[s] that the ['094] patent is invalid." Bausch & Lomb Inc., 914 F.Supp. at 952. The Court finds such a possibility unacceptable.

**\*11** In sum, this factor weighs in favor staying the case because monetary relief-the only relief Plaintiffs seek-is fully capable of restoring Plaintiffs to the *status quo ante. Accord* Brown, 18 U.S.P.Q.2d at 1496 ("While the Court recognizes that the reexamination could cause significant delay in the proceedings, the complexity of the case and the fact that Mr. Brown can be fully compensated should he prevail at the reexamination and trial support staying this action.").FN12

> FN12. Moreover, a stay would not affect the issue of damages accruing during the pendency of the reexamination period should Plaintiffs ultimately prevail at trial. The Federal Circuit has considered the impact of a completed reexamination upon the viability of infringement claims relating to the reexamined patent. *See, e.g.,* Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed .Cir.1998). The general rule is that the owner of a reexamined patent "is entitled to infringement damages, *inter alia,* for the period between the date of issuance of the original claims and the date of issuance of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                 Page 10
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

the reexamined claims if the original and reexamined claims are 'identical.' " *Id.* (citing 35 U.S.C. §§ 252 and 307(b); *Tennant Co. v. Hako Minuteman, Inc.,* 878 F.2d 1413, 1417, (Fed.Cir.1989)).

**IV. Conclusion**

A future trial date, standing alone, does not obviate otherwise unassailable reasons to stay these proceedings. At the very least, awaiting outcome of reexamination will facilitate motion disposition and trial, as valuable efficiencies will be gained by awaiting the input of the PTO on the scope of the claims in light of the prior art that will be considered during the reexamination proceedings.

The Court's decision mirrors, in many respects, that made in *Middleton* by the Honorable James E. Gritzner of the United States District Court for the Southern District of Iowa. By the time Judge Gritzner ruled on the defendant's motion to stay, the "long and convoluted" case before him was eight years old-"proceeding from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times."*Middleton, Inc., 2004 WL 1968669 at * 1.* Like this Court, Judge Gritzner was faced with the choice of ruling on numerous motions for summary judgment-in fact, three motions presenting legal questions nearly identical to the motions presently before this Court-or staying the case pending PTO reexamination. *Id.* The case was set for trial in less than two months. *Id.* The plaintiff in *Middleton*-much like Broadcast and IO Research-resisted the motion to stay "based primarily on the short time left before trial and the delay in seeking reconsideration."*Id.* Judge Gritzner's thorough and thoughtful explanation warrants repeating:

In the present case, the litigation has been ongoing for over eight years. The trial date is set and is scheduled for the week of October 12, 2004 [i.e., less than two months away]. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

However, these facts should be weighed against the benefits of issuing a stay. As argued by [the defendant], the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to " 'be conducted with special dispatch." ' *Gould,* 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, *see Toro Co. [v. L.R. Nelson Corp.],* 223 U.S.P.Q. [636,] 638 [ (C.D.Ill.1984) ]; the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

***12** In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with [Plaintiff's] contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

*Id.* at *5-6.

This Court finishes where the Southern District of Iowa did two short years ago.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that Defendant Charter Communications, Inc.'s Motion to Stay Pending Reexamination of the U.S. Patent 6,076,094 By United States Patent and Trademark Office shall be, and now is, **GRANTED.**It is further

**ORDERED** that the proceedings in the above-captioned case are **STAYED** from the date of this Order until further notice. It is further

**ORDERED** that the parties shall immediately advise the Court of the PTO's decision to grant or deny Defendant's petition for reexamination of the '094 patent, this Court continuing or lifting the present stay pending that initial determination. It is further

**ORDERED** that the parties shall advise the Court of any final decision that results from the PTO's reexamination of the '094 patent.

D.Colo.,2006.
Broadcast Innovation, L.L.C. v. Charter Communication, Inc.
Not Reported in F.Supp.2d, 2006 WL 1897165 (D.Colo.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.