Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

Page 1

KLA-Tencor Corp. v. Nanometrics, Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
KLA-TENCOR CORPORATION, a Delaware corporation, Plaintiff,
v.
NANOMETRICS, INC., a California corporation, Defendant.
No. C 05-03116 JSW.

March 16, 2006.

Michael N. Edelman, Michael H. Kalkstein, Ben S. Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto, CA, for Plaintiff.
Peter H. Kang, Matthew Laurence McCarthy, Teague I. Donahey, Sidley Austin LLP, San Francisco, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF PATENTS-IN-SUIT

JEFFREY S. WHITE, J.
*1 Now before the Court is Defendant Nanometrics, Inc.'s ("Nanometrics") Motion to Stay Proceedings Pending Reexamination of Patents-in-Suit. Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS Defendant's motion and STAYS ALL PROCEEDINGS with respect to all patents-in-suit.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"), the assignee of United States Patents Nos. 6,483,580 ("the '580 patent") and 6,590,656 ("the '656 patent"), brought this action claiming that Nanometrics had infringed these patents by manufacturing, offering for sale and/or selling six devices, including but not limited to the Atlas metrology system and/or other metrology systems. (Declaration of Michael N. Edelman in Support of KLA-Tencor's Opposition to Stay ("Edelman Decl."), Ex. A at 2-3; Declaration of Edward V. Anderson in Support of Motion to Stay Pending Reexamination ("Anderson Decl. 1"), Ex. A at 1.) KLA-Tencor then filed a first amended complaint adding a cause of action for infringement of United States Patent No. 6,611,330 ("the '330 patent"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have propounded, and one has responded to, their first set of requests for production of documents. (See Declaration of Edward V. Anderson in Support of Motion to Stay and Ex Parte Motion to Shorten Time ("Anderson Decl. 2"), Ex. 4; see also Edelman Decl., Exs. L-N.) The tutorial has been set for August 22, 2006, but no trial date has yet been set. Magistrate Judge Spero has established a schedule for an exchange of discovery plans and a date and time for a discovery conference. Neither claim construction briefing nor discovery has occurred on the '330 patent infringement cause of action that KLA-Tencor has recently added.

On December 21, 2005, the United States Patent & Trademark Office ("PTO") granted Nanometrics's requests for reexamination of the '580 patent and the '656 patent. (Anderson Decl. 2, Exs. 1, 2.) On February 21, 2006, Nanometrics filed a request for reexamination of the '330 patent with the PTO. (Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant motion. Nanometrics moves the Court for a stay of all proceedings, including the litigation as to the '330 patent infringement cause of action, pending the reexamination of the '580 and '656 patents. (Mot. at 2.) KLA-Tencor urges this Court to deny Nanometrics's motion on the following grounds: (1) a stay should not be entered where the reexamination does not implicate all patents-in-suit; (2) considerations of judicial efficiency militate in favor of permitting discovery on the infringement of all patents-in-suit; (3) a stay would substantially prejudice KLA-Tencor and unnecessarily delay the action given the slow pace of PTO reexamination proceedings; and (4) a stay would put KLA-Tencor at a clear tactical disadvantage.

ANALYSIS

EXHIBIT 9

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

42

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

Page 2

A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.

*2 The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301." 35 U.S.C. § 302. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...." 35 U.S.C. § 303(a). The reexamination statute further provides that "[a]ll reexamination proceedings ... including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004) (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983)). When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." ASCII Corp. v. STD Entertainment, 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

B. The Early Stage of the Litigation Weighs in Favor of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); see also ASCII Corp., 844 F.Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. (See Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.) Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the '330 patent-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. See Target Therapeutics, 33 U.S.P.Q.2d at 2023.

C. A Stay Will Not Unduly Prejudice KLA-Tencor.

*3 In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. See Methode Elecs.,2000 U.S. Dist. LEXIS 20689, at *7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. Id. KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. Rohm and Haas Co. v. Brotech Corp., 24 U.S.P.Q.2d 1369, 1372 (D.Del.1992). However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework." Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D.Del. May 14, 2003). Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. See id. Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. See id. Under such circumstances, the delay inherent to the reexamination process does not constitute, by itself, undue prejudice. See id.

As a result, courts also consider evidence of dilatory motives or tactics, such as when a party unduly

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:08-cv-00559-BTM-CAB     Document 18-4     Filed 09/04/2008     Page 3 of 14

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

Page 3

delays in seeking reexamination of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at *7. KLA-Tencor has failed to show, beyond the delay implicit in the reexamination process, how it would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. In particular, the Court finds no evidence of dilatory tactics on Nanometrics's part in seeking reexamination at this early stage of the litigation. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.,* 983 F.Supp. 1126, 1128 (S.D.Tex.1997) (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, KLA-Tencor filed its complaint on August 1, 2005, the PTO granted Nanometrics's requests to reexamine the '580 and '656 patents on December 21, 2005, and Nanometrics filed its motion to stay proceedings on January 6, 2006. (Edelman Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In addition, KLA-Tencor filed a stipulation and proposed order seeking to add the '330 patent on January 26, 2006, and Nanometrics filed a request for reexamination of the '330 patent on February 21, 2006. (Nanometrics, Inc.'s Notice of New Authorities, Ex. A.) This does not evince dilatory motives. Furthermore, KLA-Tencor will be fully compensated for delays if it prevails at reexamination and trial. *See Brown v. Shimano Am. Corp.,* 18 U.S.P.Q.2d 1496, 1496 (C.D.Cal.1991). Thus, because a stay will not unduly prejudice KLA-Tencor, this factor also weighs in favor of granting a stay.

D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

*4 The PTO is currently reexamining two of the three patents-in-suit and reviewing Nanometrics's request for reexamination of the third patent-in-suit. (Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of New Authorities, Ex. A.) Statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases. *Rohm and Haas,* 24 U.S.P.Q.2d at 1372. These statistics "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *Id.* This is because "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the court with the opinion of the PTO and clarifying the scope of the claims." *Target Therapeutics,* 33 U.S.P.Q.2d at 2023; *see also Pegasus,* 2003 WL 21105073, at * 1-2 (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted. In *Methode,* for example, the court stayed the litigation of both the reexamined and non-reexamined patents because the issues regarding the non-reexamined patent "may be narrowed or amended as a result of the PTO's decision." *Id.* Moreover, the *Methode* court stayed the litigation of both the reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action of the two patents. *Id.* If the court stayed the litigation with respect to the reexamined patents-in-suit only, duplicative discovery could have resulted because there were likely to be common documents and witnesses in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determined yet whether it will reexamine the '330 patent, a stay of the entire suit is warranted because the reexamination of the '580 and '656 patents may significantly affect the litigation of the '330 patent. First, at the hearing on the instant motion, KLA-Tencor conceded that it accuses the same Nanometrics products of infringement of all three patents-in-suit. Second, Nanometrics argued at the hearing on this matter, and KLA-Tencor did not dispute, that the only real difference in discovery would involve the deposition of the different inventor of the '330 patent. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                        Page 4
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

of the sample" language of claim 28 of the '330 patent overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the '580 patent. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

**\*5** Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a stay would not preserve many resources."*Id.* at 6.

Here, the only claims in the case are for patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the '580 and '656 is warranted.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending reexamination of the '580 and '656 patents.

CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the '580 and '656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the '330 patent and the reexamination proceedings for the '330 patent extend beyond those

for the '580 and '656 patents, the Court will entertain a motion extend the stay at that time.

IT IS SO ORDERED.

N.D.Cal.,2006.
KLA-Tencor Corp. v. Nanometrics, Inc.
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

Page 1

HEmhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.
N.D.Ill.,1987.

United States District Court, N.D. Illinois, Eastern Division.
EMHART INDUSTRIES, INC., Plaintiff,
v.
SANKYO SEIKI MFG. CO., LTD., Defendant.
No. 85 C 7565.

Feb. 2, 1987.

*MEMORANDUM OPINION*

OCORAS, District Judge:
*1 This matter comes before the Court on defendant, Sankyo Seiki's motion to stay the proceedings in this litigation pending a final determination regarding reexamination by the Patent and Trademark Office of the patent in suit. For the reasons stated herein, defendant's motion is granted.

*FACTS*

This is an action for patent infringement. Plaintiff, Emhart Industries, Inc. ("Emhart"), filed the complaint on August 28, 1985, alleging that defendant, Sankyo Seiki Mfg. Co., Ltd. ("Sankyo Seiki"), has infringed its patent (the "Voland" patent) for a "cam operated program timer" (U.S. Patent No. 3,727,015). No preliminary injunctive relief was sought. The parties have been engaged in discovery for almost one year, including depositions and document production in Japan. The discovery cut-off date of November 30, 1986, has passed, however, no pretrial order is in place and the Court has not considered any trial schedule for this case.

Defendant contends that during recent (September 1986) depositions of plaintiff's in-house patent counsel (Robert F. Meyer) and one of the alleged inventors of the Voland patent (Kurt Pauker) it discovered that two patents (the "Brown patents") owned by plaintiff, antedated the Voland patent and constituted prior art. The Brown patents were not cited to the Patent and Trademark Office ("PTO") during the prosecution of the Voland patent application. On September 29, 1986, defendant filed a request for reexamination of the Voland patent based, in part, upon the Brown patents. On December 5, 1986, the PTO granted the request on the grounds that it raised "substantial new questions of patentability." Presently pending before the Court is defendant's motion to stay the proceedings in this litigation, filed on December 11, 1986.

*DISCUSSION*

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302. A request for such a reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so "with special dispatch." 37 C.F.R. § 1.550(a).

Determining the desirability of a staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO a significant issue, patent claim validity, involved in the dispute before the Court. Shifting the validity issue to the PTO has many advantages, including:

*2 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

**EXHIBIT 10**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:08-cv-00559-BTM-CAB   Document 18-4   Filed 09/04/2008   Page 6 of 14

Not Reported in F.Supp.   Page 2
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Fisher Controls Co. Inc. v. Control Components Inc.,* 443 F.Supp. 581, 582, 196 U.S.P.Q. 817, 818-19 (S.D.Iowa 1977).[FN1]

Moreover, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion:[FN2]

The bill does not provide for a stay of court proceedings. It is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a *useful and necessary alternative* for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted in* [1980] U.S. Code Cong. & Ad. News 6460, 6463. (Emphasis added). *See also Ingro v. Tyco Industries, Inc.,* 227 U.S.P.Q. 69 (N.D.Ill.1985) (this Court granted a request for a stay of patent litigation pending the outcome of reexamination based, in part, on the above-quoted legislative history); P. Rosenberg, *Patent Law Fundamentals* § 15.09[3] at 15-167 (2d ed. 1986) ("In cases which have not progressed beyond ... initial litigation stages, the reexamination procedure *should be utilized*") (Emphasis added).

Plaintiff objects to a stay of the proceedings on four grounds. The Court is not persuaded by any of the plaintiff's arguments. First, plaintiff contends that there exists no adequate legal remedy for the loss of jobs and the possible destruction of its defrost timer business, which losses will allegedly follow from the delay caused by a reexamination proceeding in this case. The Court notes that, notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court. Moreover, it is not altogether clear that an injunction would, in fact, save plaintiff's defrost timer business. Defendant has submitted evidence suggesting that General Electric, defendant's largest customer, terminated Emhart as a supplier of defrost timers for reasons completely unrelated to the present suit.

*3 Plaintiff's second argument is that defendant has delayed unnecessarily in filing its request for reexamination, and thus, its motion for stay should be denied. Plaintiff claims that the facts necessary to establish the defenses set forth in defendant's request for reexamination were known to defendant since November of 1985. In support of this assertion, plaintiff points out that on November 1, 1985, in response to plaintiff's Interrogatory 3(d), defendant indicated that:

All of the claims in the patent in suit are unenforceable because the patentees failed to draw to the attention of the Examiner of the application from which the subject issued the *closest prior art* known to the applicants, *including* the United States *Patents Nos. 3,350,606, 3,500,005* [Brown] and *3,553,720* [Brown]. The question of the unenforceability of the patent in suit is under a *continuing investigation,* and hence this response will be supplemented as necessary. (Emphasis added).

Defendant does not deny that it knew of the Brown patents in November of 1985, nor that it suspected that the patents constituted prior art. However, defendant contends that it did not at that time know, nor could it have known, whether the Brown patents antedated the Voland patent and thus were legally available as prior art. Defendant argues that it was only during the depositions of one of the alleged inventors of the Voland patent and of plaintiff's in-house patent counsel that it was established that the Brown patents actually constituted prior art. The record reflects that defendant promptly filed its

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:08-cv-00559-BTM-CAB   Document 18-4   Filed 09/04/2008   Page 7 of 14

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

request for reexamination after the conclusion of these depositions.

As the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date. The Court notes that the plaintiff has *not* alleged, nor is there any evidence to support a finding, that the defendant's request was made solely for the *purpose* of delaying the litigation. Rather, if defendant is "guilty" of any "crime," it is of dragging its feet in filing its otherwise valid request for reexamination.

Third, plaintiff contends that defendant's motion for stay should not be granted because this case has "substantially progressed." Plaintiff cites to *Digital Magnetic Systems Inc. v. Ansley,* where the court, while granting the requested stay, cautioned that the reexamination process should not be abused "by applying for reexamination after protracted, expensive discovery or trial preparation." 213 U.S.P.Q. 200, 290 (W.D.Okla.1982). The Court recognizes that significant, costly discovery has already taken place. However, substantially no trial preparations have been carried out-there is no pretrial order in place and no trial schedule has been set.

Moreover, it is significant here that defendant contends that it could not have filed its request for reexamination before it took the depositions of Robert Meyer and Kurt Pauker, whereupon it discovered that the Brown patents actually constituted prior art. The depositions of Pauker and Meyer were originally set for January 28, 1986, and May 19, 1986, respectively, but were postponed, at plaintiff's request, until September 1986. Defendant claims that plaintiff purposely delayed to prohibit defendant from establishing whether or not the Brown patents were legally available as prior art references. Clearly, based on defendant's response to plaintiff's Interrogatory 3(d), plaintiff knew that defendant was investigating the existence of prior art. Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.

*4 Lastly, it should be noted that the same court that decided *Digital,* has subsequently granted a stay pending reexamination in a case that was much further advanced than the instant case. *See Loffland Brothers Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886 (W.D.Okla.1985) (stay granted after significant discovery, pretrial conference and trial date set). *See also Gould v. Control Laser Corp.,* 705 F.2d 1340, 217 U.S.P.Q. 985 (Fed.Cir.1983), cert. denied, 104 S.Ct. 343 (1983) (stay granted five years after commencement of litigation and only 20 days before scheduled start of trial). In sum, the Court finds that granting a stay 18 months into this litigation, after admittedly significant discovery, but virtually no trial preparation, will not unduly prejudice the plaintiff, especially in light of the plaintiff's own delay.[FN3]

Fourth, and finally, plaintiff claims that reexamination proceedings will not "solve anything with finality" because the PTO's decision on the patent's validity is not binding. Mem. Opp. at 5-6. This is simply not so. "A reexamination proceeding may result in the final cancellation of claims from the patent." *Manual of Patent Examining Procedure* § 2271 (1985). Of course, the patent owner may appeal the PTO's decision to the Board of Appeals and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 145. Clearly, however, the end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial.

Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality. Based on the foregoing, the Court finds that the benefits of granting defendant's motion to stay outweigh the burdens of delay caused by a reexamination proceeding in this case.[FN4] Accordingly, defendant's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, is granted.

FN1. This oft-quoted case was decided under the PTO's reissue proceeding then in effect, which was quite similar to the present reexamination proceeding except that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:08-cv-00559-BTM-CAB   Document 18-4   Filed 09/04/2008   Page 8 of 14

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

institution of the proceeding could only be requested by the patentee. The advantages of shifting the validity issue to the PTO are the same though in both.

FN2. Early versions of what became the reexamination statute expressly provided for a stay of court proceedings. S. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980).

FN3. Plaintiff's reliance on the decision in *Antonious Kamata-Ri & Co., Ltd.,* 205 U.S.P.Q. 294 (D.Md.1979), for the assertion that this Court should not stay the proceedings in this case because it has been pending for over a year, is misplaced. *Antonious* may be distinguished from the instant case in that the court in *Antonious* had access to records of two other forums that had previously examined the validity of the patent in suit, making it less likely that the court would need the PTO's expert opinion. 205 U.S.P.Q. at 295. Moreover, the litigation in *Antonious* did not involve the issue of prior art. In fact, the court noted that where the issue of prior art *was* involved, the PTO's opinion could be "invaluable." *Id.* at 296. Lastly, the court in *Antonious* was primarily concerned with whether or not it should order the owner to file for reissue, rather than whether a stay should be granted pending reissue examination.

FN4. The Court notes in addition that where litigation has been stayed pending reexamination proceedings, the PTO will attempt to expedite those proceedings. *Manual of Patent Examining Procedures* § 2286 (1985).

N.D.Ill.,1987.
Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.
Not Reported in F.Supp., 1987 WL 6314 (N.D.Ill.), 3 U.S.P.Q.2d 1889

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

▷BEN INGRO, Plaintiff, v.
N.D.Ill. 1985.

United States District Court, N.D. Illinois, Eastern Division.
BEN INGRO, Plaintiff,
v.
TYCO INDUSTRIES, INC., SEARS ROEBUCK AND CO., MONTGOMERY WARD & CO., INC., SPIEGEL ORDER STORES, INC., VENTURE STORES, INC., OSCO DRUG, INC., TOYS 'R' US, INC., K MART CORPORATION, CIRCUS WORLD TOY STORES, INC., SERVICE MERCHANDISE COMPANY, INC., ZAYRE CORP., WIEBOLDT STORES, INC., CHILDREN'S PALACE, INC., J. C. PENNEY COMPANY, INC., HOUSEHOLD MERCHANDISING, INC., and McDADE & COMPANY, Defendants.
No. 84 C 10844.

May 31, 1985.

MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:
*1 In December of 1984, plaintiff Ben Ingro filed a complaint against Tyco Industries, Inc. and fifteen of its customers alleging infringement of plaintiff's patent, U. S. Patent 3,810,515. On or about January 23, 1985, Tyco filed a request for reexamination of the patent with the U. S. Patent and Trademark Office (PTO); on April 5, 1985, the PTO granted the request on the grounds that it raised a substantial new question of patentability affecting all claims of the patent. In the meantime, on February 12, 1985. Tyco filed a motion to stay the proceedings in this litigation pending a final determination in the reexamination proceedings. For the following reasons, Tyco's motion will be granted.

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U. S. patent. A request for such a reexamination must be based upon prior art patents or publications which raise 'a substantial new question of patentability.'Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so 'with special dispatch.' 37 C.F.R. § 1.550(a).

Determining the desirability of staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO an issue, patent claim validity, involved in the dispute before the district court. As Chief Judge Markey, writing for the Court of Appeals for the Federal Circuit noted:

> One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding). Early versions of what became the reexamination statute (citation omitted) expressly provided for a stay of court proceedings during reexamination (citation omitted). An express provision was deemed unnecessary, however, as explained in the House report:
>
>> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner. (Original emphasis) (Citations omitted)

Gould v. Control Laser Corp., 705 F.2d 1340 (F. Cir. 1983).

*2 Moreover, as an Oklahoma district court has noted:

**EXHIBIT 11**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts. Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation. Yet, in cases . . . which have not progressed beyond the initial litigation stages and in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized.

Digital Magnetic Systems, Inc. v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982). Although the present case is in its initial stages (only a single interrogatory and three production requests have been served), and plaintiff has the adequate remedy of money damages if his patent is found to be valid and infringed, plaintiff objects to a stay of the proceedings on nine grounds.

Three of plaintiff's objections to a stay have recently been considered and rejected by the Federal Circuit Court of Appeals, which, as of October 1, 1982, has had exclusive appellate jurisdiction over all patent infringement cases; a fourth objection has been rendered moot by the PTO's granting Tyco's request for reexamination. Three of plaintiff's objections allege constitutional infirmities with the reexamination proceedings; these objections have now been answered by the Federal Circuit Court of Appeals' holding in Patlex Corp. v. Mossinghoff, No. 84-699 (F. Cir. March 7, 1985). There, the Federal Circuit affirmed the decision of the district court that 35 U.S.C. §§ 301-307, the reexamination statutes, do not violate the Fifth Amendment, the Seventh Amendment, or Article III. Plaintiff has also protested that Tyco's requested stay is premature, since the request for reexamination had not been granted as of the time plaintiff responded to the motion. Defendants' request was granted on April 5, 1985, however, and thus, plaintiff's objection of prematurity is now moot.

A fifth objection plaintiff makes to the motion for a stay is the allegation that Tyco made the request for reexamination to harass plaintiff and to delay the litigation unduly and unreasonably. The evidence does not support plaintiff's allegation. Tyco explains that although plaintiff invited Tyco on April 5, 1984, to institute reexamination proceedings and indicated that plaintiff would then defer to the PTO, Tyco chose not to institute reexamination proceedings at that time since additional negotiations continued to occur between the parties. Tyco also contends that it had hoped plaintiff would be persuaded by Tyco's position that the new prior art not previously considered by the PTO invalidated the patent, and Tyco had hoped to avoid the expenses involved in a request for reexamination. Tyco's explanation is buttressed by the fact that after Tyco initially identified to plaintiff the prior art not previously considered by the PTO, plaintiff later disclaimed claims 1 and 2 of his patent.

*3 Tyco also points out that in response to K Mart Corporation's Interrogatory No. 1, plaintiff indicated that it 'became aware of K Mart's infringing use and sale of his patented magnetic car' as early as 1977 and confirmed such sales each year since 1977. Nevertheless, plaintiff waited to commence litigation almost seven years after his first knowledge of alleged infringement and almost six years after the alleged first contact between plaintiff and Tyco. The court agrees that especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings, which on the average involve 15.9 months from filing date to termination in the PTO, will constitute neither undue nor unreasonable delay. (Reexamination Filing Data, Defendant's Exhibit B). Plaintiff's concern that Tyco or the other defendants may file multiple requests for reexamination for the purpose of delay if the current request is denied is also unwarranted; this court can later modify or vacate the stay if it is abused.

Plaintiff's initially most appealing argument against a stay is entitled 'Proof of Damages Becomes Stale' and alleges that if discovery must wait until the termination of the reexamination proceedings, Ingro 'will have lost the opportunity to collect necessary documents from the various defendants and third parties.' However, as Tyco points out, seeking discovery relating to proof of damages from defendants at this point in the litigation would be premature until after discovery on liability has been conducted. Plaintiff's claimed need 'to go back to 1970 to prove prior invention over some of the cited patents' will probably not require discovery of others, and defendants have pledged to make every effort to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3:08-cv-00559-BTM-CAB   Document 18-4   Filed 09/04/2008   Page 11 of 14

Not Reported in F.Supp.                                             Page 3
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

retain existing records relating to the manufacture, use, and sale of the products involved in this litigation. Tyco has also indicated that because of Aurora Products of Canada, Ltd.'s alleged liquidation, Tyco would not object to plaintiff's attempt to obtain from Aurora relevant documents and the identification of prospective witnesses. Because of the time, effort, and expense involved in discovery of damages and other issues involving the named defendants and third parties other than Aurora, however, such other discovery should await the outcome of the reexamination proceedings.

Plaintiff's next argument, that summary judgment would be a superior alternative to a stay of the proceedings, makes little sense. As Tyco points out, plaintiff argues inconsistent positions; on one hand, he argues that the obviousness test as applied to the patented invention is simple, indicating that no genuine issues of material fact exist; on the other hand, he contends that experts may be necessary to set forth or assess the facts and seeks a trial by jury of the 'difficult issues of obviousness.' Moreover, a motion for summary judgment is neither pending nor believed to be appropriate at the present time.

Contrary to plaintiff's next argument against a stay, that only patent holders lose during reexamination proceedings, plaintiff's patent probably will be enhanced if it is recertified in the reexamination proceedings. As the Federal Circuit has stated with respect to a successful reissue application:

> *4 [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain-a fact likewise to be taken into account by the trial judge.

American Hoist v. Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1354 (Fed. Cir. 1984). Futhermore, if the patent is upheld upon reexamination, plaintiff may recover from any who have infringed in the interim.

Finally, rather than a stay pending reexamination running counter to the reexamination statutes' legislative history, such legislative history indicates Congress and the testifying witnesses approved of courts liberally granting stays within their discretion. As the Federal Circuit recently stated:

> The bill's proponents foresaw three principal benefits [of the reexamination legislation]. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office.See Senate Hearings at 1, wherein Senator Bayh said that reexamination would be 'an aid' to the trial court 'in making an informed decision on the patent's validity'. Third, reexamination would reinforce 'investor confidence in the certainty of patent rights' by affording the PTO a broader opportunity to review 'doubtful patents'.126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).
>
> When Congress voted the reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve. Congress, without apparent objection, applied the legislation to all unexpired patents.

Patlex Corp., v. Mossinghoff, No. 84-699, slip. op. at 15-16 (F. Cir. March 7, 1985).

Accordingly, for the foregoing reasons, Tyco's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, will be granted.

It is so ordered.

N.D.Ill. 1985.
Ingro v. Tyco Industries, Inc.
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 117976 (N.D.Ill.)

Page 1

HSun-Flex Co., Inc. v. Softview Computer Products Corp.
N.D.Ill.,1989.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
SUN-FLEX COMPANY INCORPORATED, a California corporation, and DACA International B.V., a Netherlands corporation, Plaintiffs,
v.
SOFTVIEW COMPUTER PRODUCTS CORP., a New York corporation, and Robert King, an individual, Defendants.
No. 89 C 296.

Sept. 27, 1989.

*Memorandum and Ruling on Defendants' Motion for Stay*

BERNARD WEISBERG, United States Magistrate.
*1 Having reviewed the briefs and exhibits submitted in connection with this motion, and letters from counsel dated April 5, June 9, June 12 and September 1, 1989, we conclude that defendants' motion should be granted.

In *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* 3 U.S.P.Q.2d 1889 (N.D.Ill.1987), Judge Kocoras listed several benefits of staying federal court patent litigation pending the outcome of reexamination proceedings before the Patent and Trademark Office (PTO). They include the following. The court will have the benefit of expert review by the PTO of all prior art presented to the court, discovery problems relating to prior art can be alleviated, the suit will probably be dismissed if the patent is invalidated, reexamination may encourage a settlement, the complexity, length and cost of the litigation will probably be reduced and defenses in evidence will be more easily limited. Each of those benefits is present here. This case is at an early stage. The complaint was filed on January 13, 1989. No pretrial discovery has yet been taken although plaintiffs served deposition notices with document requests on March 28, 1989. There is nothing to indicate that this stay is sought for the sake of delay. Indeed plaintiffs themselves delayed in filing this suit for almost six years after they first threatened suit against defendants. A stay here would serve the purposes of the reexamination statute, 35 U.S.C. § 305, and will facilitate the reexamination process itself. *See Manual of Patent Examining Procedure* ¶ 2263, Item 2 in Appendix to Defendants' Response to Plaintiffs' Opposition to Defendants' Motion to Stay.

Plaintiffs' arguments against the stay are not persuasive. The statute requires reexamination proceedings to be completed with "special dispatch". Even if issues remain to be litigated after the reexaminations are completed, the cost and scope of the remaining litigation are likely to be substantially reduced. While we agree with plaintiffs that Congress did not intend PTO reexamination to lead to a stay in every case, we are satisfied that a stay in the circumstances of this lawsuit fully serves the purposes of the reexamination statute. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 601-02 (Fed. Cir.1985); *Gould v. Control Laser Corp.,* 705 F.2d 1340 (Fed. Cir.1983).

N.D.Ill.,1989.
Sun-Flex Co., Inc. v. Softview Computer Products Corp.
Not Reported in F.Supp., 1989 WL 117976 (N.D.Ill.)

END OF DOCUMENT

**EXHIBIT 12**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

53



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Ex Parte* Reexamination Filing Data - June 30, 2008

1. Total requests filed since start of *ex partes* reexam on 07/01/81 .................................. 9382[1]

   a. By patent owner                3540    38%
   b. By other member of public      5677    60%
   c. By order of Commissioner       165     2%

2. Number of filings by discipline

   a. Chemical Operation             2763    29%
   b. Electrical Operation           3173    34%
   c. Mechanical Operation           3296    35%
   d. Design Patents                 150     2%

3. Annual Ex Parte Reexam Filings

   | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
   |---|---|---|---|---|---|---|---|
   | 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
   | 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
   | 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 633 |
   | 1984 | 189 | 1992 | 392 | 2000 | 318 | 2008 | 487 YTD |
   | 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
   | 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
   | 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
   | 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation ..................................... 2533 ........... 27%

5. Decisions on requests ........................................................ 9080

   a. No. granted ................................................................. 8329 ........... 92%

      (1) By examiner              8216
      (2) By Director (on petition) 113

   b. No. denied .................................................................... 751 ........... 8%

      (1) By examiner     716
      (2) Reexam vacated  35

---

[1] Of the requests received in FY 2008, 17 requests have not yet been accorded a filing date, and preprocessing of 13 requests was terminated for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

**EXHIBIT 13**

6. Total examiner denials (includes denials reserved by Director)..............................829

    a. Patent owner requester            441    53%
    b. Third party requester             388    47%

7. Overall reexamination pendency (Filing date to certificate issue date)

    a. Average pendency             24.3 (mos.)
    b. Median pendency              18.9 (mos.)

8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 23% | 28% | 12% | 25% |
| b. All claims cancelled | 7% | 13% | 21% | 11% |
| c. Claims changes | 70% | 59% | 67% | 64% |

9. Total ex parte reexamination certificates issued (1981 – present) ....................6278

    a. Certificates with all claims confirmed      1595    25%
    b. Certificates with all claims canceled       678    11%
    c. Certificates with claims changes         4005    64%

10. Reexam claim analysis – requester is patent owner or 3rd party; or Comm'r initiated.

    a. Certificates – PATENT OWNER REQUESTER ..........................................2667

        (1) All claims confirmed      603    23%
        (2) All claims canceled       204     7%
        (3) Claim changes           1860    70%

    b. Certificates – 3rd PARTY REQUESTER ...................................................3464

        (1) All claims confirmed      974    28%
        (2) All claims canceled       443    13%
        (3) Claim changes           2047    59%

    c. Certificates – COMM'R INITIATED REEXAM ..........................................147

        (1) All claims confirmed       18    12%
        (2) All claims canceled        31    21%
        (3) Claim changes            98    67%